PAUL V. SIMPSON, BAR NO. 83878
JAMIE RUDMAN, BAR NO. 166727
KENDALL M. BURTON, BAR NO. 228720
SIMPSON, GARRITY & INNES
Professional Corporation
601 Gateway Boulevard, Suite 950
South San Francisco, CA 94080
Telephone: (650) 615-4860
Fax: (650) 615-4861

Attorneys for Defendant AJW Construction, Inc.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIPOLITO ACOSTA, JESUS ACOSTA, FILEMON GARCIA, ENRIQUE JAUREGUI, SAUL LOZANO, RICARDO MUNGUIA, JUAN M. NAVARRO, JUAN RODRIGUEZ; EVERARDO VILLA,<br><br>Plaintiffs,<br><br>v.<br><br>AJW CONSTRUCTION, a California corporation; and DOES I through XX,<br><br>Defendant. | Case No. 07-04829 SC<br><br>**OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEYS FEES AND COSTS**<br><br>Date: November 16, 2007<br>Time: 10:00 a.m.<br>Place: Courtroom 1, San Francisco<br>Hon. Samuel Conti |

## I.    INTRODUCTION

Defendant AJW Construction, Inc. ("AJW") has properly removed Plaintiffs Hipolito Acosta, Jesus Acosta, Filemon Garcia, Enrique Jauregui, Saul Lozano, Ricardo Munguia, Juan M. Navarro, Juan Rodriguez; and Everardo Villa's (hereinafter, "Plaintiffs") Complaint for Damages to federal court.  As explained below, although Plaintiffs have artfully pled only state law claims in their Complaint, Plaintiffs' claims for recovery of unpaid wages, which include claims for accrued paid time off, are completely preempted by both Section 301 of the Labor Management Relations Act ("LMRA") and by the Employment Retirement and Income Security Act of 1974

1  ("ERISA"). Therefore, Plaintiffs' Motion to Remand Removed Action and For Attorneys' Fees

2  and Costs should be denied.

3  ## II.    LEGAL ARGUMENT

4  **A.    Removal is Proper Because Plaintiffs' Claims are Completely Preempted by**

5  **Section 301 of the Labor Management Relations Act.**

6  Section 301 of the LMRA completely preempts state law claims if resolution of the state

7  law claims requires the interpretation of a collective bargaining agreement. *Franchise Tax Board*

8  *v. Construction Laborers Vacation Trust* (1983) 463 U.S. 1, 23 (preemptive force of section 301

9  "is so powerful as to displace entirely any state cause of action for violation of a collective

10  bargaining agreement".); *Lingle v. Norge Div. of Magic Chef, Inc.* (1988) 486 U.S. 399, 412; *Allis-*

11  *Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 213. When a claim is completely preempted by

12  federal law, the claim may be removed to federal court notwithstanding the fact that state law

13  would also provide a cause of action. *See, Franchise Tax Board, supra*, at 23. Preemption is

14  determined by the substance of the claim, not its characterization in the complaint. *See, Stallcop v.*

15  *Kaiser Found. Hosps.,* (9th Cir. 1987) 820 F.2d 1044, 1049. Under the "artful pleading" doctrine,

16  the court may investigate the true nature of a plaintiff's allegations; if the complaint actually raises

17  a Section 301 claim on a collective bargaining agreement, even though it is framed under state

18  law, the claim is preempted. *Id.* at 1049 (although plaintiff's complaint did not reveal that her

19  employment was governed by a collective bargaining agreement, plaintiff's state law claim was

20  removable under Section 301 because her claim required the interpretation of a collective

21  bargaining agreement). A plaintiff cannot defeat removal of federal claims by disguising or

22  "artfully pleading" them as state claims.

23  Here, the terms and conditions of Plaintiffs' employment were subject to a collective

24  bargaining agreement between AJW and the Northern California District Council of Laborers

25  ("CBA"). *See*, Declaration of Alfonso Quintor, ¶ 2, Exh. A. Although Plaintiffs do not reveal

26  that their employment was subject to the CBA in their Complaint, Plaintiffs and Plaintiffs'

27  were well aware of the CBA. In fact, Plaintiffs' counsel acknowledges that Plaintiffs' collective

28

1    bargaining agent negotiated settlement agreements on behalf of Plaintiffs[1] in his letter dated

2    August 19, 2007, attached as Exhibit A to Plaintiffs' counsel's declaration in support of Plaintiffs'

3    Motion to Remand.

4        Plaintiffs' claims for recovery of unpaid wages will require the interpretation of the CBA,

5    and are therefore claims arising under federal law, regardless of how Plaintiffs have chosen to

6    characterize their claims in their Complaint. In their Complaint, Plaintiffs seek to recover accrued

7    paid time off pursuant to Labor Code 227.3. Complaint, ¶ 24. Under Labor Code Section 227.3,

8    employees must be paid all vested vacation time as wages upon their termination, unless otherwise

9    provided by a collective bargaining agreement. Section 28A of the CBA governing Plaintiffs'

10   employment addresses employee benefits, including paid vacation. *See*, Declaration of Alfonso

11   Quintor, Exh. A. AJW does not have a separate paid vacation or paid time off policy for its

12   Union employees; Plaintiffs can only accrue paid time off or vacation pay through the employee

13   benefit plan established by the CBA. *See*, Declaration of Alfonso Quintor, ¶ 3. Therefore,

14   whether or not Plaintiffs are owed wages for vested vacation time can only be determined by

15   interpreting the section of the CBA regarding vacation pay.

16       In addition, Plaintiffs have asserted that they are "owed wages" at specific wage rates

17   ranging from $23.50 per hour to $27.96 per hour. *See*, Complaint ¶¶ 15-23. Plaintiffs do not

18   specify any particular basis for their claim that they are "owed wages." However, Plaintiffs'

19   claims for unpaid wages must necessarily be based on either an assertion that they were not paid

20   for all hours worked, or that they were paid for all hours worked, but at a lower hourly rate than

21   called for by the CBA. Under either theory, Plaintiffs' claims for unpaid wages will require

22   interpretation of the CBA. Section 20A of the CBA governing Plaintiffs' employment sets the

23   work hours and applicable overtime rates for all work performed by Plaintiffs for AJW. *See*, Exh.

24   A, Section 20A. Although Plaintiffs assert that resolution of their claims will only involve factual

25   questions of AJW's conduct toward each Plaintiff, the legal ramifications of that conduct, such as

26   whether or not a Plaintiff was entitled to premium or straight time pay for their hours worked, can

27

28   ---
[1] Six of the nine plaintiffs in this action have signed an agreement negotiated by their Union, Laborers' Local 304, settling their wage claims against AJW. *See*, Declaration of Alfonso Quintor, ¶ 4, Exh. B.

OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEYS FEES AND COSTS

1  only be determined with reference to the applicable sections of the CBA.  Therefore, any claim

2  that Plaintiffs were not paid all appropriate overtime or straight time will require the interpretation

3  of the CBA section regarding hours of work and overtime pay.  *See, e.g., Firestone v. Southern*

4  *California Gas Company* (9th Cir. 2000) 219 F.3d 1063 (plaintiffs' state law claims for overtime

5  compensation were preempted the LMRA because resolution of the claims required interpretation

6  of the complex pay and overtime pay provisions in the collective bargaining agreement).

7         Furthermore, Plaintiffs also need to interpret and apply the CBA in regards to their claimed

8  wage rates.  Section 19 of the CBA governing Plaintiffs' employment provides that wage rates

9  "shall be recognized as applying to classifications rather than to persons and any worker shall be

10  paid at the rate which the classification of their work calls for . . .".  *See*, Exh. A.  The CBA

11  provides numerous different work classifications with different wage rates for each classification.

12  *See*, Exh. A, Supplements.  If there was only one rate of pay under the CBA, or if there was no

13  dispute regarding the rate of pay due the employee, interpretation of the CBA would not required.

14  *See, e.g., Livadas v. Bradshaw* (1994) 865 F. Supp. 642, 644.  However, if there are a number of

15  wage rates provided under the CBA, as is the case here, and there is a bona fide dispute as to the

16  hourly rate of pay the employee is owed, then the CBA would need to be interpreted.  *Id.*  If the

17  Plaintiffs are claiming that they are owed wages because they were not paid at the appropriate

18  wage rate, the resolution of the claim for unpaid wages will necessarily require interpretation of

19  the CBA.  *See, e.g., Plumbing, Heating and Piping Employers Council of Northern California v.*

20  *Howard*, (1975) 53 Cal. App. 3d 828 (plaintiff's state law claim for unpaid wages based on

21  argument he was entitled to higher wage rate under collective bargaining agreement required

22  interpretation of collective bargaining agreement).

23         For the foregoing reasons, Plaintiffs' claims for recovery of unpaid wages are completely

24  preempted by Section 301 of the LMRA.  Plaintiffs' action was therefore properly removed to

25  federal court, and Plaintiffs' motion to remand should be denied.

26

27

28

C.   **Removal Is Proper Because Plaintiffs' Claims for Accrued Paid Time Off is Completely Preempted by ERISA.**

Plaintiffs' action for accrued paid time off is also completely preempted by ERISA, regardless of whether or not Plaintiffs have pled an ERISA cause of action on the face of their Complaint. *See, e.g., Aetna Health Inc. v. Davila* (2004) 542 U.S. 200, 214 (distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would "elevate form over substance and allow parties to evade" the pre-emptive scope of ERISA by relabeling their claims). When a state law claim falls within the scope of ERISA's civil enforcement provisions, federal preemption is complete—the state law claim is not merely displaced, it is replaced with an ERISA claim. *See, Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 54-55; *Harris v. Provident Life & Acc. Ins. Co.* (9th Cir. 1994) 26 F.3d 930, 934; *Metropolitan Life Ins. Co. v. Taylor* (1987) 481 U.S. 58, 66; *Aetna Health, Inc., supra*, at 209.

A state law claim falls within the scope of ERISA's civil enforcement provisions when a plaintiff brings a claim to recover benefits due to him or her under the terms of his plan, to enforce his or her rights under the terms of the plan, or to clarify his or her rights to future benefits under the terms of the plan. *See, Metropolitan Life Ins. Co., supra*, at 60 (employee's state law claim for nonpayment of disability benefits owned under employee benefit plan completely preempted by ERISA). An employee benefit plan is defined by ERISA as any plan established or maintained by an employer (or employee organization) for employees for the purpose of providing benefits and services such as medical, vacation, educational, apprenticeship, or retirement. 29 U.S.C. § 1002(1).

As stated above, Plaintiffs are seeking accrued vacation time pursuant to Labor Code Section 227.3 as part of their claim for recovery of unpaid wages. AJW only offers paid vacation to its Union employees pursuant to the employee benefit plan established in Section 28A of the CBA. *See*, Declaration of Alfonso Quintor, ¶ 3. Therefore, Plaintiffs' claims for recovery of unpaid wages are completely preempted by ERISA because Plaintiffs seek to recover benefits offered under an employee benefit plan.

1    Plaintiffs have argued that their action may not be removed because ERISA is not the only

2 basis for their Complaint, citing to *Karambelas v. Hughes Aircraft Co.,* (9th Cir. 1993) 992 F.2d

3 971, in support of their proposition. However, the Court in *Karambelas* held that the action at

4 issue was not preempted by ERISA because the plaintiff had not pled any facts in his complaint

5 that would support an ERISA claim—the attempt to remove his action was based upon "nothing

6 more than some speculative answers to clever questioning during the heat of a deposition." *Id.* at

7 975. Here, Plaintiffs have explicitly pled that they are owed accrued vacation pay in their

8 Complaint. *See,* Complaint, ¶ 24. Thus, the holding in *Karambelas* does not apply here.

9 Plaintiffs may also attempt to argue that their claims for unpaid vacation benefits violate legal

10 duties that arise independently of ERISA of the terms of the employee benefit plan at issue in this

11 action. However, Plaintiffs' claims are not independent of ERISA because AJW's potential

12 liability for the claimed unpaid vacation benefits derives entirely from the particular rights and

13 obligations established by the employee benefit plan in the CBA. *See, e.g., Aetna Health Inc.,*

14 *supra,* at 213.

15    For the foregoing reasons, Plaintiffs' claims for recovery of unpaid wages, including

16 accrued paid time off, are completely preempted by ERISA. Plaintiffs' action was therefore

17 properly removed to federal court, and Plaintiffs' motion to remand should be denied.

18    **D.    Plaintiff Is Not Entitled To Attorneys Fees And Costs.**

19    Plaintiffs have requested attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c) if their

20 Motion to Remand is granted. Plaintiffs are not entitled to attorneys' fees and costs, even if their

21 motion is granted. Section 1447(c) provides that the court "may require payment of just costs and

22 . . . attorney fees" on a remand motion, making an award discretionary. *Martin v. Franklin*

23 *Capital Corp.* (2005) 546 U.S. 132, 141. Absent unusual circumstances, attorneys' fees *should*

24 *not* be awarded when the removing party has an objectively reasonable basis for removal. *Id.*

25 (emphasis added).

26    Plaintiffs are not entitled to attorneys fees because AJW has an objectively reasonable

27 basis for removing this action. AJW has removed this action on the basis that Plaintiffs' claims

28 are completely preempted by Section 301 and ERISA, regardless of Plaintiffs' failure to explicitly

plead federal causes of action.  As explained above, AJW's removal of Plaintiffs' action is fairly

supported by the law.  In addition, AJW apprised Plaintiffs that their claims for unpaid wages

should be brought in federal court and attempted to resolve this matter informally prior to filing its

notice of removal.  *See*, Declaration of Paul V. Simpson, ¶ 2-3; Exh. C, D.  The mere fact that

Plaintiffs do not agree that their claims should have been brought in federal court does not render

AJW's position unreasonable or indicate it was brought in bad faith.  Thus, Plaintiffs' request for

attorneys' fees should be denied.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs Motion to Remand and Request for Attorneys Fees

should be denied

Date:  October 26, 2007                          Respectfully submitted,

                                                SIMPSON, GARRITY & INNES
                                                Professional Corporation

                                                By:
                                                PAUL V. SIMPSON
                                                JAMIE RUDMAN
                                                KENDALL M. BURTON
                                                Attorneys for Defendant AJW Construction, Inc.

1 | PAUL V. SIMPSON, BAR NO. 83878
JAMIE RUDMAN, BAR NO. 166727
2 | KENDALL M. BURTON, BAR NO. 228720
SIMPSON, GARRITY & INNES
3 | Professional Corporation
601 Gateway Boulevard, Suite 950
4 | South San Francisco, CA  94080
Telephone:  (650) 615-4860
5 | Fax:  (650) 615-4861

6 | Attorneys for Defendant AJW Construction, Inc.

7

8

9 | IN THE UNITED STATES DISTRICT COURT

10 | IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 | HIPOLITO ACOSTA, JESUS ACOSTA,                    ) Case No. 07-04829 SC
   | FILEMON GARCIA, ENRIQUE JAUREGUI,                 )
12 | SAUL LOZANO, RICARDO MUNGUIA, JUAN                )
   | M. NAVARRO, JUAN RODRIGUEZ;                       ) **DECLARATION OF PAUL V. SIMPSON**
13 | EVERARDO VILLA,                                   ) **IN SUPPORT OF DEFENDANT'S**
   |                                                   ) **OPPOSITION TO MOTION TO**
14 |                              Plaintiffs,          ) **REMAND REMOVED ACTION AND**
   |                                                   ) **FOR ATTORNEYS FEES AND COSTS**
15 |                 v.                                )
   |                                                   ) Date: November 16, 2007
16 | AJW CONSTRUCTION, a California corporation;       ) Time:  10:00 a.m.
   | and DOES I through XX,                            ) Place: Courtroom 1, San Francisco
17 |                                                   ) Hon. Samuel Conti
   |                              Defendant.           )
18 |                                                   )

19

20 | I, Paul V. Simpson, do hereby declare and state:

21 |         1.      I am an attorney duly licensed to practice law before all the courts of the State of

22 | California, and am a shareholder in the law firm of Simpson, Garrity & Innes, attorneys of record

23 | for AJW Construction, Inc. ("AJW"), in the above-entitled action.  If called and sworn as a

24 | witness, I can competently testify to the matters stated herein as true and correct.

25 |         2.      On August 28, 2007, on behalf of AJW, I sent a letter to Plaintiffs' counsel, John E.

26 | Hill, by facsimile regarding this action.  In my letter, I informed Mr. Hill that Plaintiffs'

27 | employment with AJW was governed by a collective bargaining agreement between AJW and the

28 | Northern District Council of Laborers.  I further informed Mr. Hill that Plaintiffs had asserted

{CLIENT FILES\20444\5\00080835.DOC}                                                          - 1 -

claims that were preempted by Section 301 of the Labor Management Relations Act and the Employment Retirement and Income Security Act of 1974 ("ERISA") and that AJW intended to remove this action to federal court.  I also informed Mr. Hill that several Plaintiffs had signed a settlement agreements resolving their claims for unpaid wages against AJW, and that the settlement agreements barred the wage claims pled in this action.  A true and correct copy of my letter to Mr. Hill is attached as Exhibit C to this declaration.

3.       Mr. Hill sent a response to my letter by facsimile on August 29, 2007.  Mr. Hill did not dispute that some Plaintiffs had signed settlement agreements encompassing wage claims, but disputed whether the settlements foreclosed further litigation over the same subject matter. Mr. Hill also did not dispute that Plaintiffs' employment was governed by a collective bargaining agreement.  Mr. Hill threatened to file a motion to remand if AJW attempted to remove this action to federal court.   A true and correct copy of Mr. Hill's response to my letter is attached as Exhibit D to this declaration.

4.       AJW has not removed this action to federal court in bad faith.  AJW has removed this action because Plaintiffs' claims for unpaid wages and/or vacation benefits are completely preempted by both the LMRA and ERISA.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 25 day of October 2007, at South San Francisco, California.

Paul V. Simpson

# EXHIBIT A

# LABORERS' MASTER AGREEMENT
## 2002-2006

THIS AGREEMENT, made and entered into this 22nd day of October 2001, and effective the 24th day of June, 2002, by and between the ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC., herein after referred to as COLLECTIVE BARGAINING REPRESENTATIVE OF EMPLOYER, and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO, hereinafter referred to as UNION, modifying, amending and changing the Agreement made and entered into the 17th day of May, 1951, as modified by the Agreements dated June 4, 1952; July 14, 1953; April 13, 1954; April 12, 1955; April 30, 1956; April 19, 1957; June 30, 1959; July 28, 1961; June 27, 1962; July 1, 1965; June 16, 1968; June 16, 1971; July 2, 1974; May 10, 1977; April 30, 1980, January 18, 1983, March 5, 1986, November 21, 1988, May 17, 1992 and June 14, 1996, by and between the ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC. and the NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS of the LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO.

*WITNESSETH:*

### Section 1 - General Provisions

**A. Definitions**

    (1)    The term "Employer" shall refer to the Associated General Contractors of California, Inc.

    (2)    The term "Union" shall refer to the Northern California District Council of Laborers.

    (3)    This Agreement shall apply to any employee who performs work falling within the presently recognized jurisdiction of those Local Unions of the Laborers' International Union of North America affiliated with the Northern California District Council of Laborers; except that this Agreement shall not apply to superintendents, assistant superintendents, general foremen, civil engineers and their helpers, timekeepers, messenger persons, confidential employees and office help.

    (4)    This Agreement shall apply to Northern California, which term means that portion of the State of California above the Northerly boundary of Kern County, the Northerly boundary of San Luis Obispo County, and the Westerly boundaries of Inyo and Mono Counties, which includes the following counties: Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Francisco, San Joaquin, San Mateo, Santa Clara, Santa Cruz, Shasta, Sierra, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

**B. Coverage and Description of Laborers' Work Covered by this Agreement**

1

(1)    This Agreement shall cover all work coming within the recognized jurisdiction of the Laborers' International Union of North America.

(2)    Subject to the preceding paragraph and subject also to the provisions of Section 14 of this Agreement, it is agreed that Laborers' work shall include but not be limited to: All Laborers' work necessary to tend the carpenters and other building trades craftsmen, stripping of concrete forms, handling and raising of slip forms, sewer cleaners, gardening, horticulture, landscaping, trackmen (construction, maintenance, repair), all cleanup of debris, grounds and buildings, steam cleaning and all General Laborers' work. In accordance with Green Book Decision dated August 2, 1920 - December 11, 1924, the loading and unloading, carrying and handling of all rods and materials for use in reinforcing concrete construction shall be done by Laborers under the supervision of such person as the Employer may designate. The hoisting of rods shall be done by Laborers, except when a derrick or outrigger operated by other than hand power is used.

All Laborers' work in connection with excavation for building and all other construction, including digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing and bracing of foundations, holes, caissons and cofferdams, manning, setting and moving all manually movable pumps. (This does not restrict the Laborers from performing other work.)

All Laborers' work in connection with concrete work, including chipping and grinding, sandblasting, mixing, handling, shoveling, conveying, pouring, concrete pumps and similar type machines, grout pumps, nozzlemen (including gunmen and potmen), vibrating, guniting and otherwise applying concrete, whether done by hand or any other process, and wrecking, stripping, dismantling and handling concrete forms and false work, including tending of plasterers and brick and block layers.

All Laborers' work in the excavation, grading, preparation concreting, asphalt and mastic paving, paving, ramming, curbing, flagging and laying of other stone materials, and surfacing of streets, ways, courts, underpasses, overpasses and bridges.

All work in connection with the operation of spreader boxes, such as True-Lay, Rola Pavers and Laytons or similar type models, including but not limited to all shoveling and shifting material and cleaning of boxes, shall be the work of the Laborers. All Laborers' work in connection with the cutting of streets and ways for all purposes, including aligning by any method, digging of trenches, manholes, etc., handling and conveying of all materials for same; concreting of same; and the backfilling, grading and resurfacing of same. All Laborers' work in connection with the construction of caissons, cofferdams, subways (except as covered by Master Tunnel Agreement), aqueducts, water lines, culverts, flood controls, airports, drains and sewers, and any type of conduit, no joint pipe, including the cribbing, lagging, bracing, sheeting, checking grade for pipe laying, trench jacking and handling of lagging hammers on all open trenches and ditches. All Laborers' work in connection with shoring, underpinning including cutting, fitting, placing and raising of all structures.

All Laborers' work in connection with drilling, all work of loading, placing and blasting of all powder and explosives of whatever type regardless of the method used for such loading and placing.

All signaling and rigging in connection with Laborers' work.

All Laborers' work in connection with the wrecking of buildings and other structures.

All Laborers' work in connection with the slinging, handling and placing of all rip-rap, rock and stone on highways, jetties, retaining walls or wherever used.

All wrecking work on construction and/or razing sites: all Laborers' work on pre-casting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job.

All work in connection with the operation of such equipment that is necessary and incidental to carry out the work of the Laborer.

2

(3)    All classifications listed in Supplement No. 1 of this Agreement which are not listed under this Section shall be included in the coverage and description of Laborers' work just as though incorporated in full in this Section.

(4)    Should an Individual Employer signatory to this Agreement subcontract the masonry or plastering portion of a project, said contract shall specify that the work to be performed shall be done under the terms and conditions of the current Masonry and/or Plaster Tender Agreement that has been negotiated by the Northern California District Council of Laborers or its affiliates, which is in effect in the territory in which the work is performed. However, Masonry work which is incidental to the work of the Individual Employer may be performed under the terms and conditions of this Agreement.

(5)    Any Employer not signatory to both the Tunnel and Laborers' Master Agreement shall agree that whenever work is performed which is covered by the terms of the Laborers' Master Tunnel Agreement for the 46 Northern California Counties, the provisions of that Agreement shall be fully applicable to and binding upon the Individual Employer.

### Section 2 - Bargaining Representatives

#### A.  Union's Recognition of Collective Bargaining Representative of Employer

The Union hereby recognizes and acknowledges that the Collective Bargaining Representative of Employer includes in its membership a majority of the Individual Employers in the highway, general building and heavy construction industry, and said Individual Employers are performing the greater percentage of work therein.  By reason of such facts the Union hereby recognizes that the Collective Bargaining Representative of the Employer, as herein-above referred to, is the collective bargaining representative for all Individual Employers who authorize the Employer to represent them with respect to Collective Bargaining with the Northern California District Council of Laborers.  A list of said Individual Employers shall be furnished to the Union at the commencement of negotiations and the Employer shall furnish the Union with a complete monthly report of any additions and deletions to the list of Individual Employers represented by the Employer.

In the event the Union (District Council) enters into any other agreement with other employers or employer associations concerning the type of work covered hereby in the area which shall have terms more favorable to such employers or employer associations and the members thereof than this Agreement, then such more favorable provisions shall become a part of and apply to this Agreement only in the geographical area where such other agreement is in effect.

#### B.  Employers' Recognition of Union as Collective Bargaining Representative of Employees

The Employer and the Individual Employers covered hereby recognize and acknowledge the Northern California District Council of Laborers of the Laborers' International Union of North America, AFL-CIO as the collective bargaining representative for the employees in the area aforementioned covering the jurisdiction of the Union.

#### C.  Access to Project

A Union Representative shall have access to the project during working hours for the purpose of checking the manner of compliance with which the terms of this Agreement are being complied.

### Section 3 - Employment and Discharge

#### A.  Union Security

3

Union and in the employment of an Individual Employer on work covered by this Agreement on the effective date of this Subsection 3A shall, as a condition of employment or continued employment, remain a member in good standing of the Union in the appropriate Local Union of the Union. Every person covered by this Agreement and employed to perform work covered by this Agreement shall be required, as a condition of employment, to apply for and become a member of and to maintain membership in good standing in the Union in the appropriate Local Union of the Union which has territorial jurisdiction of the area in which such person is performing work on or after the expiration of eight (8) days of employment on such work following the beginning of such employment on the effective date of this revised Subsection 3A, whichever is later. Membership in any such Local Union shall be available to any such person on the same terms and conditions generally applicable to other members.

If Federal law is hereafter amended to permit a lesser requirement for Union membership or Union membership as a condition of employment than provided in this Subsection, the Collective Bargaining Representative of the Employer and the Union will promptly enter into negotiations with regard to such subject.

(2)    The Individual Employer shall be required to discharge any employee pursuant to this Subsection 3A only when a written notice from the Union or Local Union, with an immediate copy of such notice to the Union, of such employee's non-compliance with this Subsection, stating all pertinent facts showing such non-compliance, shall have been served upon such Individual Employer and a reasonable time (not to exceed 48 hours) has been allowed for compliance therewith.

## B. Employment

(1)    The Union or Local Union shall maintain open and non- discriminatory hiring halls for the use of workmen desiring employment on work covered by this Agreement and such workmen shall be entitled to use such hiring halls. It is mutually agreed by the Employer and the Union to fully comply with all of the provisions of Title 7 of the Civil Rights Act of 1964, Presidential Executive Order #11246, the Americans with Disabilities Act of 1990, and the California Fair Employment Practices Section, to the end that no person shall, on the grounds of sex, race, color, disability, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of Section 3 of this Agreement. (A list of Local Unions, their telephone numbers and daily dispatching hours is attached hereto as "Schedule A" for convenience only.)

The Union shall retain full power to change the location of any hiring hall listed herein, to change the daily dispatching hours listed herein or to cause the merger, amalgamation or consolidation of any two or more hiring halls listed herein. The Union shall give notice in writing to the Employer whenever any such change, merger, amalgamation or consolidation becomes effective. If the Employer desires a location of a hiring hall or daily dispatching hours other than as specified herein, notice of such desire shall be given to the Union in writing and the Collective Bargaining Representative shall promptly enter into negotiations with regard to such subject.

(2)    Each person desiring employment shall register through such hiring hall by appearing personally and by indicating his/her name, address, telephone number, Social Security Account Number, qualifications and employment desired. Each such person shall be listed numerically in the order in which he/she registers.

In the territorial jurisdiction of the following Locals only 73 Stockton, 139 Santa Rosa, 185 Sacramento, 270 San Jose, 291 (Napa/Lake Counties only), 294 Fresno, 297 Salinas, 324 Martinez, 326 Solano and 1130 Modesto, a person may register by phone if his residence is more than 10 miles from the nearest hiring hall maintained by said Local.

4

Distance for interpreting this Subsection shall be determined by using the nearest Class "A" road or highway.

(3)    No person shall be entitled to have his name placed on any employment list which is applicable to a particular type or classification of work unless he/she has been employed in such type or classification of work for six months consecutively or accumulatively within a period of three (3) years immediately preceding the date of his/her registration.

(4)    The Individual Employer shall contact the appropriate hiring hall of the local Union having work and area jurisdiction for all Laborers as he/she or it may from time to time need, and the Local Union shall furnish to the Individual Employer the required number of qualified and competent Laborers of the classifications needed by the Individual Employer in accordance with the provisions of this Subsection 3B, if such Laborers are available.

(5)    When requesting Laborers, the Individual Employer shall submit job orders indicating the number of persons desired, qualifications of each person desired, the location of the job, the reporting date and time and the representative of the Individual Employer to be contacted on the job site.

(6)    The appropriate hiring hall of the Local Union of the Union having work and area jurisdiction will furnish in accordance with the request of the Individual Employer such qualified and competent Laborers of the classifications needed from among those entered on said lists to the Individual Employer by use of a written referral in the following order of preference:

Persons shall be referred in the order in which they are registered if their registration indicates that they are qualified for and desirous of taking such referral, unless they are not available for referral, subject to the following conditions: First,

(a)    Notwithstanding any other provision of this Agreement, the Individual Employer may request a person by name, out of order, and such person must be dispatched if such person is registered on the out-of-work list and if such person was employed previously by such Individual Employer or member of a joint venture within three years prior to such request within the territorial jurisdiction of the appropriate Local Union of the Union.

(b)    In addition to requests permitted by the provision of Subsection 6(a), the Individual Employer may request any person registered on the out-of-work list out of order for any reasons; provided, however, that at no time shall any job contain more than 50% of persons requested under Subsection 6(b). It will not be a violation of this Agreement for an owner (1 person) to perform Laborers' work when needed, provided that said owner is performing work with at least one (1) additional Laborer on the job site.

(c)    Any Local Union, may at its option, permit a percentage of individual requests greater than 50% on any job. Such permission shall not be deemed a violation of this Agreement.

(d)    Notwithstanding the above, the mobility of all employees who have been employees of the Individual Employer for a period of three hundred sixty (360) hours out of the immediate preceding six (6) months, shall not be restricted for any reason subject to Subsection 3A, Union Security. In order for the Individual Employer to exercise the mobility provisions set forth in this paragraph, the Individual Employer shall:

(1)    Provide the appropriate Local Union with a current list of names and Social Security Numbers of those employees who are eligible for mobility, prior to any employee being moved; and

(2)    The Individual Employer shall notify the appropriate Local Union of a job or project of more than five day's duration.

(3)    In cases where an individual employer is found to have dispatched certain employees not eligible for mobility to a job site as defined herein, then the local Union having jurisdiction in the project area shall notify the employer of such violation or error. The employer, upon notification by the Union, shall within one (1) working day, correct said violation or error to

5

the satisfaction of the Union. Additional laborers shall be obtained in accordance with the hiring hall procedures from the Local Union in the area where work is performed. All laborers shall have in their possession proof of proper dispatch and Union status which shall be produced upon request of Local Union representative in the area where the job is located. Any violation not resolved to the mutual satisfaction of the parties shall be subject to Section 9 of this Agreement.

        (4)     No Employee of the employer shall suffer loss of mobility for a break in service of two (2) months or less with the employer if the break in service is due to illness, extended vacation or winter shutdown.

        (e)     No person shall be dispatched pursuant to the provisions of Subsection 6(a), 6(b) or 6(c) of this Section unless the Individual Employer's request is in writing, dated, is signed by an appropriate management representative, specifies whether the person is a rehire and names the job for which rehire is requested.

Second, persons who, within five (5) years immediately preceding the job order, performed work covered under this Agreement in the geographical area covered by this Agreement in the order in which they registered.

Third, persons who are registered in the order in which they registered by qualification.

        (7)     Available for employment shall mean: All persons eligible for referral shall be present at the hiring hall or present at their residence phone if they live at a location specified in Subsection (2) of this Subsection 3B during dispatching hours, unless excused for the following reasons:

        (a)     When a death or imminent death occurs in the immediate family, from the date of death and not exceeding one week after the date of burial, however, they shall produce bona fide proof of such death or imminent death from hospital or family doctor.

        (b)     Persons on jury duty, providing they produce bona fide proof that they are serving on a jury.

        (c)     Persons temporarily serving in the U.S. Military Reserve, providing they show bona fide proof of such service.

        (d)     Attendance at Workers' Compensation Hearing or any administrative or court appearance.

        (8)     When ordering workers, the Individual Employer will give notice to the appropriate hiring hall of the Local Union, if possible, not later than 2:30 p.m. of the day prior (Monday through Friday) or, in any event, not less than seventeen and one-half (17-1/2) hours, if possible, before the required reporting time. In the event that forty-eight (48) consecutive hours after such notice (Saturday, Sundays and recognized holidays excluded), the Local Union shall not furnish such workers, the Individual Employer may procure workers from any other source or sources. If workers are so employed, the Individual Employer shall promptly report to the appropriate hiring hall of the Local Union, in writing or by phone with written confirmation within forty-eight (48) hours, the name, address and Social Security Account Number of the employee procured from such other source or sources and the date of employment and the location of the job on which he/she is employed. Workers who report on the first day are to be paid from the time they report to the Individual Employer's designated location.

        (9)     Dispatching hours shall be as specified in subdivision (1) of this Subsection 3B or as specified in the notice or notices submitted pursuant to subdivision (1) of this Subsection 3B. In emergency cases, individuals may be dispatched other than at such dispatching hours.

        (10)    Each person, upon being referred, shall receive a written referral to be transmitted to the Employer representative at the job site indicating the name, address, Social Security Account Number, type of job, date of proposed employment and date of referral.

        (11)    To insure the maintenance of a current registration list, all persons who do not re-register or answer roll call, as the case may be, on each regularly scheduled roll call day (which shall not be more often than once a week), shall be removed from the registration list unless excused in

6

accordance with Subsection 3B(7). Any person may re-register by phone and must be personally present at the phone during dispatch hours. If a referral is made by phone, a written dispatch slip must be sent to the Individual Employer and worker. Any person who is permitted to register by telephone under this Subsection 3B must appear personally at the appropriate hiring hall on roll call day. If such persons re-register or answer roll call pursuant to the provisions of this Section, they shall maintain their previous position on such list, subject to the provisions of Subsection 12 of Subsection 3B following, such person shall not be entitled to the position he/she held prior to his elimination in the event he/she re-registers or answers roll call, as the case may be. Persons will be excused from answering roll call only for the reason enumerated in Subsection 3B(7).

(12)   Persons shall be eliminated from the registration list for the following reasons:

(a)   Dispatched to a job - except that any person who is rejected by the Individual Employer or who fails to complete two (2) full days of work shall retain his/her position on said list; provided, no person who is rejected by the Individual Employer shall be re-referred to such Individual Employer with respect to the same request pursuant to which he/she was initially referred.

(b)   Failing to accept suitable employment one time during the current week at the time of dispatch. Employment which cannot be reached by an individual because of lack of transportation shall not be deemed suitable as to him/her.

(c)   Unavailable for employment.

(d)   Any person dispatched to a job who fails to report for work.

(13)   Notwithstanding the provisions of this Subsection 3B, upon the same notice as required in Subsection 3B(6)(e) being given to the appropriate Local Union of the Union, an Individual Employer shall have complete freedom to employ the first key Laborer.

(14)   Subject to the provisions of this Agreement, the Individual Employer shall have complete freedom of selectivity in hiring and the Individual Employer retains the right to reject any job applicant referred by the Union for just cause including but not limited to persons unable to produce legal residence documentation as required under the Immigration Reform and Control Act of 1986. In the event an Individual Employer receives two (2) referrals from the Local Union not meeting the skill requirements of the hiring request, the Individual Employer shall be free to secure such skilled person from any available source subject to Subsection 3A of this Agreement.

(15)   The Local Unions and the Union shall post in places where notices to applicants for employment with the Individual Employers are customarily posted, all provisions relating to the functioning of the hiring arrangements, including the provisions set forth in this Section, and each Individual Employer shall similarly post in places where notices to employees and applicants for employment are customarily posted, a notice of the hiring arrangements set forth in this Section.

(16)   Selection of applicants for referral to jobs pursuant to this Agreement shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligation of Union membership, policies or requirements, provided that the provisions hereof shall not modify or qualify the requirements of Subsection A of this Section 3.

(17)   Any person aggrieved by the operation of the hiring hall shall submit his/her grievance to the permanent hiring hall neutral arbitrator provided that such submission is made in writing stating the reasons for the grievance within ten (10) working days after the occurrence of the grievance.

The Arbitrator shall have full power to adjust the grievance, and his decision thereon shall be final and binding upon the person submitting the grievance and all parties hereto. Forms for the submission of any such grievance shall be available at all times in the office of the Union and each Local Union.

The permanent hiring hall neutral arbitrator shall be Gerald R. McKay and notices required by this Section shall be mailed or delivered to P.O. Box 406, Burlingame, CA 94011-0406. The date of

this postmark and/or date of delivery of the grievance, whichever is later, shall toll the running of the ten (10) day period.  The costs of arbitration shall be borne equally by the Employer and the Local Union regardless of who the Local Union or Individual Employer is.

**C.  Discharge**

No employee shall be discharged or discriminated against for activity in or representation of the Union or any Local Union.  The Local Union shall be the sole judge of the qualifications of its members.

The Individual Employer shall be the sole judge of the qualifications of all of their employees, and may on such grounds, discharge any of them.  No employee shall be discharged without just cause.  In the event of discharge without just cause, the employee shall, if he/she so desires, be reinstated with payment for time lost.  In the event of a dispute, the existence of "just cause" shall be determined under the grievance procedure provided for in Section 9 hereof.  In the event of reinstatement, the amount of back pay awarded under Section 9 hereof may not exceed 90 days unless the grievant was employed by the Individual Employer who discharged him/her for more than 1500 hours in the two (2) years preceding the date of discharge.

**D.**  The Individual Employer <u>may</u> notify the Local Union hiring hall of all employees who have quit, or been terminated or recalled during the week.  Such notification <u>may</u> be on a written form which will include the following information:

> NAME OF EMPLOYER COMPANY
> NAME OF EMPLOYEE
> DATE OF TERMINATION
> DATE OF RECALL
> REASON FOR TERMINATION

**E.**  No employee may be transferred from an Individual Employer's payroll to another Individual Employer's payroll except in accordance with Subsection 3B, except any transfer to and/or from a joint venture of which the Individual Employer is a partner.

### Section 4 - Show-Up Time

When any employee reports for work and there is no work provided by the Individual Employer, he/she shall be paid two (2) hours show-up time at the applicable rate plus subsistence where applicable, provided, however, no show-up time will be payable to any person who reports for work without the necessary and legally required documentation to establish work right status under applicable Immigration and Naturalization Laws.  If work is suspended on account of weather conditions, the employee shall be entitled to show-up time only if he/she remains on the job site for two (2) hours pending abatement of such weather unless sent home earlier by the Individual Employer.  If work is to be suspended for any reason, the employee shall be notified at least two (2) hours before being required to report for work.  The employee shall keep the Individual Employer informed at all times of his/ her correct address, and if he/she has a telephone, his/her telephone number.  If an employee does not keep the Individual Employer so informed, the Individual Employer shall be relieved of the duty of giving such notice and further he/she shall not have to pay such employee show-up time.  Radio and/or TV notice is acceptable on remote projects as means of notification providing the Union is notified in writing at the commencement of the job.

### Section 5 - Higher Wages

8

No employee receiving a higher rate of pay shall suffer a reduction of pay by reason of the execution of this Agreement.

### Section 6 - Lunch Time

No employee shall be required to work more than five (5) hours without time off for a meal period, which shall be not less than one-half (½) hour.

If Laborers are required to work continuously for more than five (5) hours without an opportunity for lunch, they shall receive overtime pay for work after the fifth (5th) hour until opportunity to take time for lunch is afforded. When opportunity for lunch is afforded, the employee shall be allowed thirty (30) minutes at his/her straight time rate to eat his/her lunch. Lunch periods at the option of the Individual Employer may be staggered any time after three and one-half (3½ ) hours from the beginning of the shift. On a 4 x 10 work week, staggered lunches begin no sooner than four and one-half (4½ ) hours into the shift and no later than the sixth (6th) hour.

Any employee required to work more than two (2) hours overtime at the end of a shift shall be permitted a one-half (½) hour meal period for which he/she shall receive regular overtime pay. No work shall be performed by him/her during such meal period. (Meal periods may be staggered from the 10th to the 11th hour.)

### Section 7 - Records

A.    Each Individual Employer shall provide a proper means for registering the reporting, quitting time, and as supplied by the employee, the address and telephone number of all employees covered by this Agreement. In the event of a dispute, such records shall be accessible to the business representative of the Union or Local Union during working hours.

B.    Each Individual Employer, upon request of any Trust Fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds. Such review shall be permitted not less than ten (10) working days after demand.

C.    Any Individual Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages.

D.    All delinquent contributions shall bear simple interest at a rate of one and one half percent (1.5%) per month until receipt of payment.

E.    Subject to accounting verification liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty ($150.00) dollars per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.

F.    The cost of any audit shall be borne by the Individual Employer if the delinquency disclosed by the audit is in excess of one thousand dollars ($1,000.00) and is not the result of a clerical error.

G.    When economic conditions warrant, the Trustees of the Trust Funds specified in this Agreement are authorized to amend the liquidated damages and interest provisions of this Agreement. Any adjustments implemented by the Trustees shall be reflective of true increases in the administrative and legal costs associated with the recovery of delinquent Trust Fund contributions.

### Section 8 - No Cessation of Work

It is mutually agreed and understood that during the period when this Agreement is in force and effect, the Union or any Local Union will not authorize any strike, slow-down, or stoppage of work in any dispute, complaint, or grievance arising under the terms and conditions of this Agreement,

9

except such disputes, complaints, or grievances as arise out of the failure or refusal of any Individual Employer to comply with the provisions of the hiring clause, Subsection 3A or B hereof, or as permitted under Subsection 28B and C hereof or whenever an Individual Employer pays Laborers improperly with checks which do not clear for collection. As to any Individual Employer who shall fail or refuse to comply with the provisions of the sections specified herein, so long as such failure or refusal continues it shall not be a violation of this Agreement if the Union or any Local Union withdraws its members who are subject hereto from the performance of any work for such Individual Employer, and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn by reason of any dispute, complaint, or grievance arising out of the violation of any similar hiring clause in any agreement between Employer and any other Union, then the Union or any Local Union may respect such withdrawal and for the period thereof may refuse to perform any work for such Individual Employer, and such refusal for such period shall not be a violation of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

## Section 9 - Grievance Procedure

Any dispute concerning the interpretation or application of this Agreement, other than a jurisdictional dispute or a dispute arising out of Subsection 3A or B, or a dispute arising out of Subsection 13C(4), or a dispute of Section 28 (Health & Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training- Retraining/Apprenticeship Plan) which said sections and the Subsections thereof are specifically exempted by the provisions of this Section, the following procedure will apply:

(1)     In the event that a dispute arises on a job, it shall be first reported to the Individual Employer and/or the Business Agent of the appropriate Local Union who shall then attempt to adjust said grievance or dispute at the job site level.

(2)     The grieving parties shall specify the date(s) of the alleged violations(s) and the provision(s) of the Agreement applicable to the dispute.

(3)     If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or otherwise authorized Union Representative and the Individual Employer or his/her representative within three (3) days after submission to the Individual Employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.

(4)     The Board of Adjustment shall be composed of two (2) members named by the Union, two (2) members named by the Association and an Impartial Arbitrator. At any point in the proceedings, should the panel be unable to reach a majority vote, the Arbitrator shall participate and his decision shall be final and binding.

(5)     In addition to any rules or procedures which the panel may adopt, the Board of Adjustment shall be governed by the following provisions:

(a)     No attorneys shall be utilized unless either party advises the other of its intent to do so within a reasonable time in advance of the hearing.

(b)     No briefs shall be submitted nor a transcript made of the hearing except by mutual agreement of the parties or by direction of the Arbitrator.

(c)     In the case of a deadlock, the Arbitrator shall render his decision upon the conclusion of the case at the Board of Adjustment hearing unless the time is extended by mutual agreement of the parties or at the request of the Arbitrator, in which case the Arbitrator shall render a

10

decision not later than thirty (30) days after submission. The Arbitrator shall not render an expanded opinion in any case unless requested by the parties.

Case 3:07-cv-04829-SC    Document 10    Filed 10/26/2007    Page 21 of 71

(d)    The parties shall select and utilize one (1) permanent impartial arbitrator who is willing to abide by the procedures set forth herein. The impartial arbitrator may be changed or replaced at the request of either party.

(6)    The Board of Adjustment shall meet not less than once each calendar month with the exception of the discharge cases which must be heard at the earliest possible date not to exceed fifteen (15) working days. Failure of either party to meet or participate in the procedure shall relieve the charging party of further compliance with the grievance procedure.

(7)    Decisions of the Board of Adjustment or an Impartial Arbitrator shall be within the scope and terms of this Agreement, and shall be final and binding upon all parties hereto.

(8)    In the event an Individual Employer fails to comply with any such decisions, the Union may withdraw employees or strike the Individual Employer and such action shall not be a violation of this Agreement so long as such noncompliance continues.

(9)    The expenses of the Joint Adjustment Board and the Impartial Arbitrator, including the cost of a court reporter, shall be borne by the Contract Administration Fund.

(10)    No proceedings hereunder based on any dispute, complaint or grievance herein provided for, shall be recognized unless the grievance procedure steps outlined above have been followed. The Board of Adjustment may, by majority vote, for good cause, accept a late submission.

(11)    The Board of Adjustment shall establish regular meeting dates and administer grievances filed in conjunction with this Section as set forth in the rules and procedures which may be amended from time to time by the parties.

(12)    A decision of the Board of Adjustment by majority vote, or the decision of a permanent arbitrator shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the City and County of San Francisco, State of California.

(13)    All hearings of the Board of Adjustment shall be in the County of Contra Costa and/or County of Alameda, unless mutually agreed to move to another location.

(14)    No proceedings hereunder based on any dispute, complaint, or grievance herein provided for shall be recognized unless adequate notice was given to the Employer and/or Union or Local Union within ten days after the alleged violation was committed.

(15)    In the case of discharge, the Board shall meet within fifteen (15) working days. The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the Individual Employer against any employee for activities in behalf of, or representation of the Union not interfering with the proper performance of his/her duties.

(16)    If failure of a Board of Adjustment to meet on a discharge case within fifteen (15) working days is due to the unavailability of the Union, the wage payment and Trust Fund contribution liability shall be limited to the above fifteen (15) working days. If the Employer or Individual Employer is unavailable to meet the wage payment and Trust Fund contribution, liability shall be continuing.

(17)    The Board of Adjustment shall settle any dispute or grievance involving a subcontractor as defined in Section 11 who has agreed under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment, performance of labor and installation of materials.

(a)    When liabilities are assessed against a subcontractor for hiring violations as a result of a Board of Adjustment held under the provisions of Paragraph 17, and said subcontractor fails to satisfy said obligations, the Union shall promptly give written notice to the Individual

11

Employer and subcontractor and the Individual Employer shall pay such obligations from the retention of such subcontractor.

(18)    The procedures specified herein shall be applicable to any Individual Employer whether or not he or she is a member of Employer or any other associations.

(19)    In those instances where the Individual Employer is not a member of the Employer, the Joint Adjustment Board shall establish procedures whereby the Employer members of the Joint Adjustment Board may consist of one Individual Employer who is not a member of the Employer.

## Section 9A - Contract Administration

A trust fund entitled "The Contract Administration Trust Fund" shall be used to provide compensation to the Employer for negotiations and administration of the provisions of this Agreement, including Section 9, for the Industry. Effective June 24, 2002, each signatory employer shall contribute the sum of six cents ($.06) per hour worked or paid for to the Contract Administration Trust Fund. At the discretion of the Trustees of said Trust, contributions to the Contract Administration Trust Fund may be increased up to an additional four ($.04) cents per hour during the term of this Agreement. Such increase or increases are to be effective on such dates as determined by the Trustees. The contribution into a contract administration trust fund shall not exceed ten cents ($.10) per hour for each hour paid for or worked. The Trust Fund shall be administered solely by Trustees selected by the Employer in accordance with a trust agreement to be executed by the Employer. The contribution as described above shall commence with the work month following notice by the Laborers Northern California Trust Fund Corporation to the Individual Employers. The Union shall have the right, not more than one (1) time per year, to independently audit the Trust Fund.

## Section 9B - Industry Stabilization Fund

The Individual Employer shall contribute eleven cents ($.11) per hour for each hour paid for or worked by workers in work covered by this Agreement to the Industry Stabilization Fund. Of the $.11 per hour, two cents ($.02) per hour is earmarked for California Alliance for Jobs and one cent ($.01) per hour is earmarked for the Construction Industry Force Account Council (CIFAC).

The purpose of such funds shall be to enhance the monitoring of public works projects relative to Employer compliance with State, Federal or other public agencies public works wage and hour laws. Such contributions shall continue until written notice by the parties signatory hereto. Such trust fund shall be administered jointly by the signatory parties.

## Section 10 - Payment of Wages

A.    Each employee shall be paid wages in full each week before or at quitting time on the Individual Employer's regular pay day unless specific arrangements to the contrary are made in writing between the Individual Employer and appropriate Local Union of the Union. Employees who quit or are laid off or discharged shall be paid in accordance with the laws of the State of California.

B.    Each employee shall be given a statement with the Individual Employer's name and address, itemizing the employee's gross amount earned, hours worked, Social Security tax, withholding tax and all other deductions, also a statement of hours applicable to Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/Apprenticeship Plans.

## Section 11 - Subcontractors

12

The terms and conditions of this Agreement insofar as it affects the Individual Employer shall apply equally to any subcontractor of any tier under the control of, or working under oral or written contract with such Individual Employer on any work covered by this Agreement to be performed at the job site or job yard, and said subcontractor with respect to such work shall be considered the same as an Individual Employer covered hereby. Subject to the provisions of this Section and any other Section of this Agreement applicable to subcontractors, if an Individual Employer shall subcontract work herein defined, such subcontract shall state that such subcontractor agrees to be bound by and comply with the terms and provisions of this Agreement. A subcontractor is defined as any person, firm or corporation who agrees under contract with the Employer, or any Individual Employer, or a subcontractor of the Employer, or any Individual Employer to perform on the job site any part or portion of the construction work covered by the prime contract, including the operation of equipment performance of labor and installation of materials. The Individual Employer has the primary obligation for performance of all conditions of this Agreement. This obligation cannot be relieved, evaded or diminished by subcontracting. Should the Individual Employer elect to subcontract, the Individual Employer shall continue to have such primary obligation. Said primary obligation shall be deemed conclusive evidence of the Unions majority status for the purpose of establishing the obligation of the Individual Employer to bargain collectively pursuant to Section 8(A)(5) of the National Labor Relations Act as amended with the Union upon expiration of this Agreement, but for no other purpose, statute or law.

An Individual Employer who provides in the subcontract that the subcontractor will pay the wages and benefits and will observe the hours and all other terms and conditions of this Agreement shall not be liable for any delinquency by such subcontractor in the payment of any wages or fringe benefits provided herein, including payments required by Section 28 (Health and Welfare, Pension/Annuity, Vacation-Holiday-Dues Supplement and Training-Retraining/Apprenticeship Funds), except as follows:

The Individual Employer will give written notice to the Union of any subcontract involving the performance of work covered by this Agreement within five (5) days of entering such subcontract, and shall specify the name and address of the subcontractor. Written notice at a pre-job conference shall be deemed written notice under this provision for those subcontractors listed at the pre-job only. Notification to the Union of any subcontractor not listed in writing at the pre-job must still be given in accordance with this paragraph.

If thereafter such subcontractor shall become delinquent in the payment of any wages or benefits as above specified, the Union shall promptly give written notice thereof to the Individual Employer and to the subcontractor specifying the nature and amount of such delinquency.

If such notice is given, the Individual Employer shall pay and satisfy only the amount of any such delinquency by such subcontractor occurring within seventy-five (75) days prior to the receipt of said notice from the Union, and said Individual Employer may withhold the amount claimed to be delinquent out of the sums due and owing by the Individual Employer to such contractor.

In the event the Individual Employer fails to give written notice of a subcontract as required herein such Individual Employer shall be liable for all delinquencies of the subcontractor on that job or project without limitation.

The Individual Employer shall not be liable for any such delinquency if the Local Union where the delinquency occurs refers any employee to such subcontractor after giving such notice and during the continuance of such delinquency. The provisions of this Section 11 shall be applied only to the extent permitted by law and, notwithstanding any other provision of this Agreement, no aspect of the subcontractors' clause, including its enforcement, may be enforced by or subject to strike action.

13

Any oral or written agreement between Employer or any Individual Employer and an individual employee, which conflicts or is inconsistent with this Agreement, or any supplemental agreements hereto, disestablishes or tends to disestablish relationship of Employer and employee, or establishes a relationship other than that of Employer and employee, shall forthwith terminate. No oral or written agreement which conflicts or is inconsistent with this Agreement, or any supplemental agreements thereto, shall hereafter be entered into by and between Employer, or an Individual Employer, and any individual employee performing work covered by this Agreement. Any practice of the Employer or Individual Employer contrary to this Agreement shall forthwith terminate. Any such future practice shall not be binding on the Union or effect the interpretation of this Agreement unless specifically authorized by the Union in writing.

## Section 13A - Elimination of Restrictions on Production

No rules, customs or practices shall be permitted that limit production or increase the time required to do any work. There shall be no limitation or restriction of the use of machinery tools or other labor-saving devices.

The Union and Employer recognize that Drug/Alcohol abuse by employees shall not be tolerated for safety reasons.

The Union agrees to cooperate with Employer and Individual Employer in establishing drug and alcohol abuse policies to the extent legally possible.

**Management Rights Regarding Substance Abuse:**

Notwithstanding any other provisions of this agreement, the Employer expressly reserves the right, in its discretion, to undertake the following measures:

(a)    In the sole discretion of the employer, requiring covered employees to submit to physical examination by competent medical personnel to determine whether there is a probability that the employee is suffering from any physical impairment which might cause the employee to be a safety hazard to him/herself or others, or which might cause the employee to be unable to perform assigned tasks within the coverage of this agreement in a prompt and competent manner. Such tests may include, in the discretion of the employer, such tests of the employee's bodily fluids as the employer may reasonably believe will elicit evidence of the employee's use of substances which are reasonably likely to alter or impair the employee's ability to perform his/her duties in a prompt, competent and safe manner.

(b)    Implementation of rules regarding the discipline and/or discharge of any employees that the employer determines, as a result of the tests described in subparagraph (a), are reasonably likely to become voluntarily impaired or disabled from the safe performance of their work tasks as a result of the ingestion of alcohol or performance-impairing drugs.

(c)    An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each Employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all Employees shall be subjected to such testing. The Employee may establish two random testing pools, one for DOT regulated Employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to Employees that Employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and Employees prior to implementing a random drug testing program.

(d)    Implementation of a voluntary employee assistance program, to provide counseling, therapy and monitoring of those employees who request employer assistance in controlling and overcoming problems related to the use of drugs and alcohol.

14

Disputes arising from the implementation of the provisions of this Paragraph shall be subject to the grievance procedures set forth in Section 9 of this Agreement.

## B. Protective Clothing

The Individual Employer shall furnish the necessary goggles, hard hats or other protective clothing. Laborers working in rain, snow or sleet shall be furnished with waterproof clothing. Laborers working in gunite or handling concrete and/or cement shall be furnished rubber boots and gloves. Laborers working in mud or water shall be furnished boots. Such equipment shall be furnished by the Individual Employer free of charge and returned by the employee in the same condition as received subject to reasonable wear and tear. Such equipment shall be sanitized before reissue.

## C. Safety

(1)     The Union shall cooperate with the Individual Employer and with each employee in carrying out all pertinent rules and regulations dealing with health, safety and welfare of employees promulgated by the Department of Industrial Relations of the State of California. All employees shall perform their duties in each operation in such manner as to promote safe and efficient operations of each particular duty and of any job as a whole.

(2)     All State and/or Federal and/or Local Safety Laws, Standards, Rules and Regulations shall be applicable to all work covered by this Agreement. The Individual Employer is solely responsible for implementing and maintaining such Laws, Standards, Rules and Regulations. Neither the Union nor any Local Union is responsible for implementing or maintaining such Laws, Standards, Rules or Regulations.

(3)     Adequate first-aid equipment shall be maintained and provision shall be made for the safety of employees covered by this Agreement on each job by each Individual Employer. Each Individual Employer shall arrange for adequate and prompt transportation to a hospital or doctor for any employee who is injured on the job and may require doctor's care or hospitalization or both. Each Individual Employer must post the name and address of its doctor and of the Worker's Compensation Insurance carrier on the job site.

(4)     No employee shall be discharged for refusing to work under conditions injurious to his health or safety as determined under any rule or regulation of the United States or State of California or any political subdivision. Such determination shall be made by a responsible agent of the State of California or OSHA or any of its political subdivisions, or by a safety inspector from the applicable insurance carrier.

(5)     When drilling holes in rock or other dust producing material with air or power controlled drilling equipment (excluding jack hammer), dust shall be controlled by water, chemical or other suitable means within the maximum acceptable concentration as set forth in the California or OSHA Construction Safety Orders.

(6)     Should the Employer or Individual Employer desire a change in variance in the California or OSHA Construction or any applicable Safety Orders, they will notify the Union in writing not less than thirty (30) days prior to making a request for such change.

(7)     Manhaul trucks regularly used for personnel transport but not designed for this purpose, shall be provided with safe seating and side and end protection to prevent falls. Some convenient means of mounting and dismounting the truck shall be provided. Adequate protection shall be provided during inclement weather. A bell or other means of communication with the driver shall be installed.

15

(8) Employees who as a direct result of an on-the-job industrial injury are unable to complete a full day of work shall nevertheless be paid for the full day on which such injury occurred; provided, however, that said injury requires the attention of a licensed physician.

(9) The Local Union with area jurisdiction shall be notified within one day (twenty-four hours) of any industrial injury which results in death or requires hospitalization:

## Section 14A - Additional Work or Classifications

This Agreement shall not prevent the Employer from negotiating or making agreements with the Union for any work or classification not covered by this Agreement.

Whenever any work covered by this Agreement is to be eliminated or modified by the introduction of any new machine, mechanized process, new or different material, or new or different method or technology with respect to the performance of such work, persons employed under this Agreement and subject thereto, will be given preference for employment and will be assigned such work where it is not in conflict with International jurisdictional agreements with respect to such new machine, mechanized process, new or different material, or new or different method or technology and the use of any such new machine, mechanized process, new or different material, or new or different method or technology shall be subject to and covered by this Agreement regardless of the nature, size or characteristics of such new machine, mechanized process, new or different material or new different method or technology.

It is not the intent of the parties to provide work where no job exists.

## Section 14B - Jurisdictional Disputes

There shall be no cessation or interference in any way with any work of the Employer or any Individual Employer by reason of jurisdictional disputes between the Union and any other Union affiliated with the AFL-CIO or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America with respect to jurisdiction over any of the work covered by this Agreement. Such disputes will be settled by the Unions, themselves, or submitted to the International Presidents of the Union involved in the dispute for determination. Until such determination is made and confirmed by the disputing Unions, the work shall proceed as originally assigned by the Individual Employer. Craft jurisdiction is neither determined nor awarded by classifications or coverage descriptions appearing in this Agreement.

## Section 15 - Pre-Job Conference

There shall be a pre-job conference prior to the start of a job or project, at the option of either party, where the agreed or estimated price to be paid the Individual Employer and any of his or its subcontractors if $1,000,000 or more where construction conditions or remoteness of the project warrant it. The Individual Employer shall notify, in writing, the appropriate Local Union of the Union of an award of work within ten (10) days thereof so that a pre-job conference can be arranged.

## Section 16A - Employer's Membership

This Agreement is made for and on behalf of and shall be binding upon all persons, firms or corporations that at the time of the execution of this Agreement have given or subsequently give bargaining authorization to the Employer as defined in Subsection 2A.

Once an Individual Employer is bound by the Agreement, they shall remain bound by the Agreement for the term thereof and shall remain bound by any modifications, extensions or renewals

16

thereto unless that Individual Employer gives appropriate written notice to the Northern California District Council of Laborers prior to the termination of the Agreement.

### Section 16B - Agreement Binding Upon Parties

This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the parties hereto.

### Section 17 - Contracting-Piece Work

No work shall be let or paid for by piece work, contract or lump sum direct with laborers for labor services.

### Section 18 - Wages

Wages for General Laborers and for special classifications are set forth in the Supplements attached hereto and made a part hereof as if set forth in full herein and shall be effective on June 24, 2002, and on succeeding anniversary dates as herein provided on all work, both old and new.

A.     Subsistence for employees performing work under the terms of this Agreement is set forth in Supplement No. 6 attached hereto and made a part hereof as if set forth in full herein.

B.     On a job where a Craft with whom Employer has negotiated a short work week terminates early on Friday, the Individual Employer will keep the laborer employed the balance of the work day when the Employer determines that work is available.

C.     On public work projects where wage determinations exist, such pre-determined wage and fringe rates referenced in the bid specifications shall remain in effect for the duration of said project, provided, however, that each segment let by the Owner shall be deemed the project; provided, further that this provision shall not apply to projects where the formal advertised sealed bid procedure is not used. Whenever non-signatory and/or non-union contractors appear on a public works plan holders list and where the prevailing wage determination is less than that which is provided for in the current Master Labor Agreement, the employer signatory to the 2002-2006 Laborers' Master Agreement may bid the project pursuant to the prevailing wage determination attached to and part of the bid specifications for that project. Payments to the Health and Welfare Trust Fund shall be maintained at the Laborers' Master Agreement rates. In no event shall wages be frozen for more than thirty-six (36) months on any one project. Employers should notify the appropriate local Union whenever utilizing this provision.

### Section 19 - Wages Applicable to Classifications

Wage rates shall be recognized as applying to classifications rather than to persons and any worker performing work shall be paid at the rate which the classification of their work calls for, except when it is necessary to temporarily transfer workers from one classification to another, in which event such workers shall be paid on the basis of the highest rate and the duration of payment at the highest rate shall be reckoned by the day and the half day.

When workers are requested for one classification and this work is no longer available at the rate and type of work they were requested for, then the workers have the right to accept or reject the employment offered. If the worker so desires, worker shall be given a written notice of reduction in force, stating that the classification that the worker was originally hired for is no longer available; or the worker may have the choice of a lesser rate of pay.

### Section 20A - Overtime Rates, Hours and Working Conditions

17

Eight (8) consecutive hours (exclusive of meal period), shall constitute a day's work for straight time rates unless the job or project is on a four-ten (4 x 10) hour day workweek in which case the workday shall be ten (10) consecutive hours (exclusive of meal period) at straight time rates. (If all basic Crafts employed by the Individual Employer on the job site and/or contract, are employed on the basis of 4 x 10 hour work week, the Laborers' shall work on the same basis).

(2)    Work Week

On single shift work and on the first shift of a multiple shift operation, five (5) consecutive days of eight (8) consecutive hours (exclusive of meal period), Monday through Friday, shall constitute a week's work except as otherwise provided for in this Agreement. The regular starting time of such shift shall be 8:00 a.m.

(a)    Where in any locality, existing traffic conditions, job conditions or weather conditions render it desirable to start the day shift at an earlier hour, not earlier than 5:00 a.m., or a later starting time not later than 10:00 a.m., the Individual Employer is permitted to do so.

(b)    Special Single Shift:  When the Individual Employer produces evidence in writing to the appropriate Local Union or the Union of a bona fide job requirement which certifies that work can only be done outside the normal shift hours, and notifies the appropriate Local Union or the Union by certified mail at least three (3) days prior to the start of such special shift, the Individual Employer may initiate such special shift of eight (8) consecutive hours (not in conjunction with any other shift), exclusive of meal period, Monday through Friday.  Such shift shall be in accordance with the provisions of Subsection 5(a) of this Section.  Provided, however, if, by direction of the Contracting Authority, the bid specifications require it, or congestive traffic conditions on Fridays are such that work conditions would be unsafe for employees, or counter-productive to the performance of work, the special single shift may commence on Sunday with double (2) time to be paid from the start of the shift to 8:00 p.m. and the applicable straight-time rate paid from 8:00 p.m. until completion of the eight (8) hour special single shift.

**NOTE: Special Single Shift rates: Area "A" $3.00/hr., Area "B" $2.85/hr. over classification. All current projects are grandfathered. The new Special Single shift provisions will become effective when recognized and published by the Department of Industrial Relations for the State of California.**

(c)    Four (4) by Ten (10) Workweek (4 x 10):  An Individual Employer may establish a workweek of four (4) consecutive days of ten (10) consecutive hours.  Applicable overtime rate shall be paid for all work before a shift begins, after ten (10) hours, and on Saturdays, Sundays and holidays.  In the event two (2) shifts are employed, ten (10) consecutive hours' work, (on the 2nd shift) exclusive of meal period, shall constitute a shift's work for which ten (10) hours shall be paid at the Second Shift Premium rate.  Provided, further, all shifts are worked the same four (4) consecutive days during a 4 x 10 work week, except as may be changed by mutual agreement.  All hours in excess of forty (40) hours in any one (1) week shall be compensated at the applicable overtime rate.

(d)    In the event that work cannot be performed Monday through Friday or Monday through Thursday (4 x 10 hour workweek) because of inclement weather, major mechanical breakdown or lack of materials beyond the control of the Employer, employees (at their option) may make up such day on Friday or Saturday, whichever the case may be, and shall be paid at the applicable straight time rate.

(e)    Notwithstanding the above, it shall not be a violation of this Agreement to start individual employees at no more than one (1) hour prior to the regularly established starting time.

(3)    On shift work, the day shift, eight (8) hours work for eight (8) hours' pay.  When two shifts are employed for five (5) or more consecutive days, on the second shift eight consecutive hours' (exclusive of meal period), shall constitute a day of work, for which eight (8) times the

employed for five (5) or more consecutive days, seven and one-half (7½) consecutive hours (exclusive of meal period) shall constitute a day of work, for which eight (8) times the straight time hourly rate shall be paid for the second shift. The third shift shall be seven (7) hours for eight (8) hours pay. On two shift operations, the first shift shall have a regular starting time not earlier than 5:00 a.m., and not later than 8:00 a.m. On three shift operations, the first shift shall start at 8:00 a.m. Shifts shall run consecutively with not more than one hour between shifts.

The Friday graveyard shift, though coming off work Saturday morning, is to be considered working Friday. Work performed after 8:00 a.m. Saturday morning shall be deemed Saturday work.

The Saturday graveyard shift, though coming off work Sunday morning, is to be considered working Saturday. Work performed after 8:00 a.m. Sunday morning shall be deemed Sunday work. The Sunday graveyard shift, though coming off work Monday morning, is to be considered working Sunday, with the exception that a graveyard shift employee who has worked seven (7) or more hours prior to the scheduled starting time of the Monday day shift and continues to work after such starting time shall continue to receive the double (2) time wage rate.

(4)     One and one-half (1½) times the regular straight time hourly rate shall be paid for all work on Saturdays (except make-up day) and before a shift begins and after it ends. Double the regular straight time hourly rate shall be paid for all work on Sundays and holidays. On two shift operations, Laborers working a complete second shift of shift work on Saturdays, Sundays and holidays shall be paid eight (8) hours of pay at the appropriate overtime rate for eight (8) hours of work. Laborers working a complete shift of shift work on Saturdays, Sundays and holidays shall be paid eight (8) hours of pay at the appropriate overtime rate for seven (7) hours of work on the second and third shift only.

(5)     (a)     From April 1, to November 14, the hours of employment shall be reckoned by the day and half day. From November 15, to March 31, the hours of employment shall be reckoned by the day, three-quarter day and half day. The fraction of a half or three quarter day to be paid for as a half or three-quarter day. Overtime hours, Monday through Friday, shall be reckoned by the hour and half hour. If after work is begun, work is suspended on account of weather conditions, not less than four (4) hours (or five (5) hours on a 4 x 10 shift) at the applicable rate shall be paid for work performed and any time thereafter shall be reckoned by the hour.

(b)     Whenever a Laborer is called out to work on Saturdays, Sundays or holidays (except on make-up days), he/she shall be paid at least four (4) hours, five (5) hours on 4 x 10 shift, at the applicable overtime rate. All time worked beyond the first four (4) consecutive hours, five (5) consecutive hours on a 4 x 10 shift, on Saturdays, Sundays and holidays shall be reckoned by the hour at the applicable overtime rate.

On shift work, the above shall apply to Laborers called out to work on the day shift and second shift of a two shift operation only. If three shifts are employed, the above shall apply except that three and one-half (3 ½) hours worked shall be paid as four (4) hours worked, seven (7) hours worked shall be paid as eight (8) hours worked, and hours worked in excess of three and on-half (3 ½) hours but less than seven (7) shall be paid on a pro rata basis, except as modified by a 4x10 work week.

NOTE: Shift differential applies only to the second shift of a two (2) shift operation. Shift differential is as follows: Area "A" $3.00/hr., Area "B" $2.85/hr. over the appropriate classification rate.

(c)     Tide Work: When an employee or employees are called out to work tide work, the employee shall receive a guarantee of a full shift at straight time. The overtime rate for Saturday, Sunday and holidays or work in excess of eight (8) hours in any twenty-four (24) hour period shall be the same rate of overtime pay as set forth in this Agreement. The hours between 8:00

19

a.m. and 5:00 p.m. shall be worked at straight time. Work performed between 5:00 p.m. and 8:00 a.m. shall be considered overtime work.

(6)     Watchpersons may be required to work any five (5) days out of the week on any shift and may also be required to do job office clean-up work. The overtime rates provided in paragraph 4 of this Section No. 20A shall apply only to watchpersons, cleaning and washing windows, service landscape laborers for work in excess of eight (8) hours in any one day, or forty (40) hours per week.

Employees cleaning and washing windows (after initial cleaning) and service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

(7)     When the Individual Employer sets up a camp or boarding house on a project, the charge made to the employee for board and room shall not exceed the subsistence rate incurred during a calendar week.

(8)     Any employees such as a flagperson shall be furnished adequate relief for use of toilet facilities.

### Section 20B - Parking

In the event free parking facilities are not available within five (5) blocks of a job site, the Individual Employer will provide such parking facilities and the Individual Employer shall have the right to designate parking areas to be used. Where, because of congested parking conditions, it is necessary to use public parking facilities, the Individual Employer will reimburse the employees for the cost of such parking upon being presented with a receipt or voucher certifying to the cost thereof, submitted weekly. Such reimbursement is to be made on a weekly basis or at the conclusion of the project, whichever occurs earlier.

On remote jobs when the access to where the work is being performed (at a job or project or within a job or project) is unsuitable, and no parking facilities are provided within a five (5) minute walk from where the work is being performed, the Individual Employer shall transport the employees to and from the place where the work is being performed, and such transporting shall be one-half (½) on the Individual Employer's time and one-half (½) on the employee's time.

### Section 21 - Status of Foremen

When the Individual Employer determines that a foreman is required to supervise a crew of Laborers, he/she shall be or become a member of this Union in accordance with Subsection 3A of this Agreement.

### Section 22 - Steward

A.     The Union may select an employee on the job as a Steward and he/she shall be a working employee. Written notification shall be given to the Individual Employer of such assignment. The Union agrees that the Steward's duties shall be performed as expeditiously as possible and the Individual Employer agrees to allow him/her a reasonable amount of time for the performance of his/her duties. The Individual Employer will give the Union forty-eight (48) hours advance written notice before terminating the Steward unless the job is completed or he/she is discharged for cause.

B.     The Steward shall be limited to and shall not exceed the following duties and activities:

(1)     Check the dispatch of each employee dispatched under the terms of this Agreement.

(2)     Report to his Business Representative all violations of this Agreement.

(3)     Report to his Business Representative any employee covered by this Agreement who, during his/her shift, leaves the job site without giving the Individual Employer and the Steward prior notice.

C.     The Steward shall not:

(1)     Stop the Individual Employer's work for any reason or tell any workers or any employee covered by this Agreement that he/she cannot work on the job.

Infraction of either of the two rules set forth in (C)(1) above shall be cause for immediate dismissal of the Steward without any prior notice.

## Section 23 - Recognized Holidays

The following days are recognized as holidays: Every Saturday and Sunday in the year, except as otherwise provided herein: New Year's Day, President's Birthday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day After Thanksgiving Day and Christmas Day.

If any of the above holidays fall on Sunday, the Monday following shall be considered a holiday.

Martin Luther King Day will become a recognized holiday when and if the five basic crafts adopt it as a holiday.

## Section 24 - Gunite, Shot Crete, Panel Crete and Similar Type Work including all placing, finishing and patching of Shot Crete or Gunite

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for the Gunite, Shot Crete, Panel Crete and Similar Type Work including all placing, finishing and patching of shotcrete or gunite are set forth in Supplement 2 attached hereto and made a part hereof as if set out in full herein covering the territory in which the Agreement is to apply.

## Section 25 - Wrecking Work; Gardening, Horticultural and Landscaping Work

The wages and certain other conditions not specifically enumerated elsewhere in this Agreement for Wrecking Work are set forth in Supplement 3; for Gardening, Horticultural and Landscaping Work are set forth in Supplement 4. Each of the Supplements referred to herein is made a part hereof as if set forth in full herein.

## Section 26 - Liability of the Parties

It is mutually understood and agreed that neither the Employer, any Individual Employer, the Union nor any Local Union shall be liable for damages caused by the acts or conduct of any individual or group of individuals who are acting or conducting themselves in violation of the terms of this Agreement without authority of the respective party, provided that such action or conduct has not been specifically authorized, participated in, fomented or condoned by the Employer, the Individual Employer, the Union or the Local Union, as the case may be.

In the event of any unauthorized violation of the terms of this Agreement, responsible and authorized representatives of the Union, Local Union, the Employer or the Individual Employer, as the case may be, shall promptly take such affirmative action as is within their power to correct and terminate such violation for the purpose of bringing such unauthorized persons into compliance with the terms of this Agreement. Such individuals acting or conducting themselves in violation of the terms of this Agreement shall be subject to discipline, up to and including discharge.

## Section 27 - Employees Not To Be Discharged For Recognizing Authorized Picket Lines

21

construction industry that the work opportunities of the employee and the Individual Employer signatory to this Agreement proceed without interruption because of disputes involving unions not signatory to an Agreement with the Employer.

No employee covered hereby may be discharged by any Individual Employer for refusing to cross a picket line established by a Local Union of the basic crafts.

### Section 28A - Health and Welfare Plan, Pension/Annuity Plan, Vacation-Holiday-Dues Supplement Plan, Training-Retraining/Apprenticeship Plan

In continuation of the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Pension/Annuity Trust Fund for Northern California, the Laborers Vacation-Holiday-Dues Supplement Trust Fund for Northern California and the Laborers Training-Retraining/Apprenticeship Trust Fund for Northern California (provided for in Trust Agreements dated March 4, 1953, August 2, 1963, April 1, 1985, June 4, 1963, November 19, 1968 and December 31, 1975, respectively, as amended and modified, and the appropriate plans adopted there under), each Individual Employer shall pay hourly contributions for each hour paid for and/or worked, including overtime pay, shift pay, show-up time pay and similar payments in accordance with the schedule specified in this Section, as follows:

| | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| Health & Welfare | $2.54 | $3.29 | $ * | $ * | $ * |
| Retiree Health & Welfare | $ .30 | $ .30 | $ * | $ * | $ * |
| Pension | $2.16 | $2.16 | $ * | $ * | $ * |
| Annuity | $ .51 | $ .71 | $ * | $ * | $ * |
| Vacation/Holiday/Dues Supplement | $2.28 | $2.28 | $ * | $ * | $ * |
| **Training-Retraining/Apprenticeship | $ .34 | $ .34 | $ * | $ * | $ * |
| Contract Administration | $ .06 | $ .06 | $ * | $ * | $ * |
| ***Industry Stabilization Fund | $ .11 | $ .11 | $ * | $ * | $ * |
| Laborers-Employers Cooperation And Education Trust (L.E.C.E.T.) | $ * | $ * | $ * | $ * | $ * |

* To be allocated.
** Effective 6/24/02 four cents ($.04) per hour is earmarked for L.E.C.E.T.
*** Effective 6/24/02 two cents ($.02) per hour is earmarked for California Alliance for Jobs and one cent ($.01) per hour for Construction Industry Force Account Council (CIFAC).

Each Individual Employer shall be subject to and entitled to the benefits of all of the provisions of the Trust Agreements specified herein establishing said Funds and any amendment or modification or amendments or modifications. In order to provide for benefits to employees without disruption during periods of contract negotiations and to assure an orderly means of collecting Trust Fund contributions during such periods, each signatory employer agrees that he/she shall be obligated to contribute to each and every Trust Fund referred to in this Agreement for any period following their termination date of this Agreement unless and until a lawful impasse occurs or until a successor Agreement is negotiated. Each signatory employer further agrees that any and all said Trust Funds may enforce this obligation by action to collect such delinquent contributions filed in any court of competent jurisdiction.

The Health & Welfare Plan shall be supplemented to provide that the Trustees shall apply amounts from the contributions specified in this Agreement to such Plan for the purpose of providing benefits to employees retired pursuant to the provisions of the Laborers Pension Trust Fund for Northern California.

The parties agree that the Trustees of the Vacation-Holiday-Dues Supplement Trust Fund may allocate up to twenty-five percent (25%) of the applicable contributions for Holiday pay.

Case 3:07-cv-04829-SC    Document 10    Filed 10/26/2007    Page 33 of 71

The Union and the Employer agree that the Individual Employers covered by the Master Agreement may continue the coverage of their supervisory personnel above the rank of foreman in the Laborers Health & Welfare Trust Fund for Northern California, the Laborers Pension/Annuity Trust Fund for Northern California, the Laborers Vacation-Holiday-Dues Supplement Trust Fund for Northern California, the Laborers Training-Retraining/Apprenticeship Trust Fund for Northern California by paying into all Trusts monthly on the basis of one hundred seventy hours (170) hours per month in accordance with the schedules set forth in the Master Agreement, regardless of the hours worked by any such employee in a month, provided, however, the Individual Employer having made one (1) payment on an employee shall continue to make such a payment so long as the employee is in his employ.

Any Individual Employer who is found to be delinquent as a result of an audit will pay and satisfy such delinquency with accrued interest and in addition pay liquidated damages. All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions. The cost of any audit shall be borne by the Individual Employer if the delinquency disclosed by the audit is in excess of one thousand dollars ($1,000.00) and is not the result of a clerical error. When economic conditions warrant, the Trustees of the Trust Funds specified in this Agreement are authorized to amend the liquidated damages and interest provisions of this Agreement. Any adjustments implemented by the Trustees shall be reflective of true increases in the administrative and legal costs associated with the recovery of delinquent Trust Fund contributions.

### Section 28B - Delinquency Withdrawals

In the event that the Board of Trustees of a fund into which the Individual Employers are required to pay, determine that an Individual Employer is delinquent in the making of any payments required by Section 28A hereof, it shall not be a violation of this Agreement, so long as such delinquency continues, if the Union takes economic action against such Individual Employer and such economic action shall not be a strike or work stoppage within the terms of this Agreement. In the event that any employees of any Individual Employer should be withdrawn pursuant to any similar clause in any agreement between the Collective Bargaining Representative of the Employer and any other Union, then the Union may respect such withdrawal, and for the period thereof, may refuse to perform any work for such Individual Employer and such refusal for such period shall not be a violation of this Agreement. Any employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as employees but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform any work.

### Section 28C - Security For Individual Employer Payments Into Trust Funds

Each Individual Employer delinquent by one (1) or more months in making the payments set forth in Section 28A above shall be notified by mail by the Administrator of the Trust or Trusts applicable of such delinquency. Copies of such notices shall be sent to the Employer and to the Union. Each such delinquent Individual Employer shall, within five (5) days of the receipt of such notice (certified mail), give a satisfactory bond in a sum equal to two (2) times the amount of the delinquency. Such amounts are to be determined by the Administrator of the Trust or Trusts

23

applicable. Such bond is not in any way to be construed as in lieu of any payments required under this Agreement.

All such bonds shall be deposited with the Administrator and shall be in a form acceptable by the Administration of the various trusts.

If the bond must be used to make any payments under Section 28A, the money shall be prorated among the amounts owed by such Individual Employer, with the first priority to the Vacation-Holiday- Dues Supplement Trust Fund, and the balance dispersed equally to the Health & Welfare, Pension/Annuity and Training-Retraining/Apprenticeship Trusts.

Whenever an Individual Employer fails to deposit a satisfactory bond within the time provided by this Section, if the notice herein provided for has been given, the Local Union shall not be required to dispatch employees, and further economic action by the Union to obtain compliance of this Section will not be a violation of Section 8 of this Agreement.

Any employees so withdrawn or refusing to perform any work as herein provided, shall not lose their status as employees, but no such employee shall be entitled to claim or receive any wages or other compensation for any period during which he/she has been so withdrawn or refused to perform any work.

Whenever any Employer covered by this Agreement is delinquent with respect to the payment of any contributions or other sum of money due to any trust fund specified in this Agreement, the Union may withdraw workers and place appropriate pickets at the premises of the Employer or places where said Employer is performing work.

## Section 28E - Supplemental Dues

Effective for all work performed on and after June 24, 2002 it is agreed that upon authorization as required by law, the amount of sixty-three cents ($.63) per hour for each hour paid for or worked shall be transmitted from the Vacation-Holiday benefit of each Laborer and shall be remitted directly to the Union. This amount of sixty-three cents ($.63) shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Laborer. Such remittance shall be made to the Union not less than twice per year.

## Section 28F - Wage and Fringe Increase

It is agreed effective June 24, 2002, thirty cents ($.30) per hour will be allocated to Retiree Health & Welfare, six cents ($.06) per hour to the Contract Administration Fund, thirty-four cents ($.34) per hour to the Training-Retraining/Apprenticeship Fund for the Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.), seventy-one cents ($.71) per hour to Annuity and eleven cents ($.11) per hour to the Industry Stabilization Fund of which two cents ($.02) per hour is earmarked for the California Alliance for Jobs and one cent ($.01) per hour is earmarked for the Construction Industry Force Account Council.

There shall be an additional ninety-five cents ($.95) per hour increase effective on 6/24/02; an additional ninety-five cents ($.95) per hour increase effective on 6/30/03; an additional ninety cents ($.90) per hour increase effective 6/28/04; and an additional ninety cents ($.90) per hour increase effective 6/27/05. Effective 6/24/02, Entry Level Laborer shall receive the same increase as specified above.

The Union may elect at its option upon ninety (90) days notice to the Employer, prior to 6/24/02, 6/30/03, 6/28/04, and 6/27/05 to allocate each increase to any or all of the following:

1. Wages
2. Health and Welfare
3. Retiree Health and Welfare

4. Pension/Annuity
5. Vacation-Holiday-Dues Supplement
6. Training-Retraining/Apprenticeship
7. Contract Administration
8. Industry Stabilization
9. Laborers-Employers Cooperation and Education Trust (L.E.C.E.T.)

provided, if any or all of the allocation is made to Fringe Benefits, such Fringe Benefits shall be effective on 6/24/02, 6/30/03, 6/28/04 and 6/27/05 as applicable.

In the event the Laborers Health and Welfare Trust Fund falls below a six (6) month reserve, any package increase negotiated by the collective bargaining parties, shall be reviewed at least 90 days prior to the effective date of such increase, and by mutual agreement such monies as are deemed necessary to provide sufficient reserve (not less than six (6) months), shall be allocated to the Health and Welfare Trust Fund. Such monies as are determined appropriate for this allocation shall have as their intent to build a six (6) month reserve.

## Section 29 - General Saving Clause

It is not the intent of either party hereto to violate laws, rulings or regulations of any governmental authority or agency having jurisdiction of the subject matter or of this Agreement, and the parties hereto agree that in the event any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings or regulations; nevertheless, the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The clauses hereof relating to "Hiring," Subsection 3A hereof, and "No Cessation of Work," Section 8 hereof, are intended to be inseparable and mutually interdependent. Should either of such sections be held or determined to be illegal or void for any reason, then both of said clauses shall forthwith become of no further force or effect, and neither party shall by implication be bound thereby. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void, they will then promptly enter into lawful negotiations concerning the substance thereof.

It is the intent of the parties to this Agreement that each and every, all and singular, of the provisions of this Agreement be fully in accordance with Federal and State Law. Its interpretation and the interpretation of each of the provisions of this Agreement is therefore intended to apply no broader than that permitted by law.

## Section 30 - Change of Name or Style

This Agreement is binding upon each Individual Employer regardless of whether he/she or it changes the name or style or address of his/her or their business. Each Individual Employer shall give notice in writing to said District Council of any intent to change the name, style or address of his/her or its business, or to perform business under more than one name or style or at more than one address, prior to the adoption of a new or different name, style or address, or the addition of new names or styles or addresses, as specified herein.

Nothing in this paragraph shall be construed as adding to the scope of work covered by this Agreement.

## Section 31 - Warranty

Each of the persons executing this Agreement on behalf of their respective Employers or Unions hereby warrants his/her authority to execute this Agreement and to bind the respective party on whose behalf he/she signs.

25

**Section 32 - Effective and Termination Date**

This Agreement shall be effective as of the 24th day of June, 2002, and remain in effect without reopening for any purpose until the 30th day of June 2006, and shall continue from year to year thereafter, unless either of the Collective Bargaining Representatives shall give written notice to the other of a desire to change the wages, hours and working conditions hereof not more than ninety (90) and not less than sixty (60) days prior to June 30 of any succeeding year.

The parties to this Agreement recognize the necessity of assuring the competitive position of the parties within the industry during the term of this Agreement. Consistent with that recognition, the parties will continually monitor the effectiveness of this Agreement relative to specific geographic or market area and will endeavor, by mutual agreement, to initiate such modifications to the Agreement during its term as may be necessary to assure the work opportunities of the employees and the competitive position of the Individual Employers.

It is agreed that in the event either party should exercise its rights under the paragraph first above set out, they will for a period of sixty (60) days prior to the 30th day of June, 2006, or June 30th of any succeeding year bargain with each other with respect to all wage rates, working conditions and hours of employment for the work herein covered.

Should an impasse be reached during the course of future negotiations to amend and/or extend the present Agreement, or during the course of negotiations over a new agreement, either party may submit the items in dispute to the Dispute Settlement Board established in the AGC-Basic Trades Joint Labor Management Committee Impasse Settlement Plan for resolution. The findings of the Dispute Settlement Board shall be binding on the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals by respective officers duly authorized to do so, this 22nd day of October, 2001.

FOR THE EMPLOYER:

THE ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.


By _____Thomas T. Holsman_____
           Executive Vice President & CEO

FOR THE UNION:

NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS OF CALIFORNIA, INC. OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO


By _____Doyle S. Radford_____
           President

By _____James M. Homer_____
           Secretary/Treasurer

By _____José A. Moreno_____
           Business Manager

By _____Bill Smith_____
           Vice President

## SUPPLEMENT NO. 1
## LABORERS WAGE RATES

WAGE RATES:     In each group, two different wage rates will apply for each classification.

Wage Rate A -     will apply to the following six (6) counties:  Alameda, Contra Costa, Marin, San Francisco, San Mateo and Santa Clara.

Wage Rate B -     will apply to the following forty (40) counties:  Alpine, Amador, Butte, Calaveras, Colusa, Del Norte, El Dorado, Fresno, Glenn, Humboldt, Kings, Lake, Lassen, Madera, Mariposa, Mendocino, Merced, Modoc, Monterev, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Joaquin, Santa Cruz, Sierra, Shasta, Siskiyou, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Labor Foremen -     shall receive a $1.00 per hour above any classification of this Agreement working under his direction.

CONSTRUCTION SPECIALIST - WAGE RATE

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| RATE A | $23.34 | $23.34 | $ * | $ * | $ * |
| RATE B | $22.34 | $22.34 | $ * | $ * | $ * |

CLASSIFICATIONS OF CONSTRUCTION SPECIALIST
Asphalt Ironers and Rakers
Chainsaw
Laser Beam in connection with Laborers' work
Masonry and Plasterer Tender
Cast in place manhole form setters
Pressure pipelayers
Davis Trencher - 300 or similar type (and all small trenchers)
Directional Boring Machine
State Licensed Blaster as designated
Diamond Drillers
Multiple Unit Drills
Hydraulic Drills
Certified Welder
New or additional classification subject to 14A of this Agreement

GROUP 1 - WAGE RATE

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| RATE A | $22.64 | $22.64 | $ * | $ * | $ * |
| RATE B | $21.64 | $21.64 | $ * | $ * | $ * |

CLASSIFICATIONS OF GROUP 1

27

Asphalt Spreader Boxes (all types)

Barko, Wacker and Similar Type Tampers

Bobcat

Buggymobile

Caulkers, Banders, Pipewrappers, Conduit Layers, Plastic Pipe Layers

Certified Asbestos & Mold Removal Worker

Certified Hazardous Waste Worker (Including Lead Abatement)

Compactors of all types

Concrete and Magnesite Mixer and ½ yard

Concrete Pan Work

Concrete Sanders, Concrete Saw

Cribbers and/or Shoring

Cut Granite Curb Setter

Dri pak-it Machine

Faller, Logloader and Bucker

Form Raisers, Slip Forms

Green Cutters

Headerboard Men, Hubsetters, Aligners by any method

High Pressure Blow Pipe (1-1/2" or over, 100 lbs pressure/over)

Hydro Seeder & Similar Type

Jackhammer Operators

Jacking of Pipe over 12 inches

Jackson and Similar Type Compactors

Kettlemen, Potmen and men applying asphalt, Lay-Kold, Creosote, Lime, caustic and similar type materials, (applying means applying dipping or handling of such materials)

Lagging, Sheeting, Whaling, Bracing, Trenchjacking, Lagging hammer

Magnesite, Epoxy resin, Fiber Glass and Mastic Workers (wet/dry)

No joint pipe and stripping of same, including repair of voids

Pavement Breakers and Spaders, including tool grinder

Perma Curbs

Pipelayers (including grade checking in connection with pipe-laying)

Precast-manhole setters

Pressure Pipe Tester

Post Hole Diggers - Air, Gas and Electric Power Broom Sweepers

Power Tampers of all types, except as shown in Group 2

Ram Set Gun and Stud Gun

Riprap - Stonepaver and Rock-slinger, including placing of sacked concrete and/or sand (wet or dry) and Gabions and similar type

Rotary Scarifier or Multiple Head Concrete Chipping Scarifier

Roto and Ditch Witch

Rototiller

Sand Blasters, Potmen, Gunmen and Nozzlemen

Signaling and Rigging

Tank Cleaners

Tree Climbers

Turbo Blaster

Vibra-Screed - Bull float in connection with Laborers' work

Vibrators

28

# GROUP 1(a) - WAGE RATE

## EFFECTIVE DATE

|        | 6/25/01 | 6/24/02 | 6/30/03 |     |     |
|--------|---------|---------|---------|-----|-----|
| RATE A | $22.86  | $22.86  | $ *     | $   | $   |
| RATE B | $21.86  | $21.86  | $ *     | $ * | $   |

## CLASSIFICATIONS OF GROUP 1(a)

Joy Drill Model TWM-2A

Gardener - Denver Model DH-143 and similar type drills. (In accordance with the terms of Understanding between Laborers and Operating Engineers dated at Miami, Florida, January 3, 1954.)

Track Drillers

Jack Leg Drillers

Wagon Drillers

Mechanical Drillers -- All types regardless of type or method of power

Mechanical Pipe Layer -- All types regardless of type or method of power

Blasters and Powderman

All work of loading, placing and blasting of all powder and explosives of whatever character regardless of method used for such loading and placing

High Scalers (including drilling of same)

Tree Topper

Bit Grinder

# GROUP 1(b) - WAGE RATE

Sewer Cleaners shall receive $4.00 per day above Group 1 wage rates. "Sewer Cleaner" means any workman who handles or comes in contact with raw sewage in small diameter sewers, and those who work inside recently active, large diameter sewers, and all recently active sewers shall receive $5.00 per day above Group 1 wage rates.

# GROUP 1(c) WAGE RATE

## EFFECTIVE DATE

|        | 6/25/01 | 6/24/02 | 6/30/03 |     |     |
|--------|---------|---------|---------|-----|-----|
| RATE A | $22.69  | $22.69  | $ *     | $   | $   |
| RATE B | $21.69  | $21.69  | $ *     | $ * | $   |

## CLASSIFICATIONS OF GROUP 1(c)

Burning and welding in connection with Laborers' work Synthetic thermic type welding.

# GROUP 1(d)

Maintenance and Repair Trackmen and Road Beds and all employees performing work covered by this Agreement shall receive $.25 per hour above their regular rate for all work performed on underground structures not specifically covered herein. This paragraph shall not be construed to

29

apply to work below ground level in open cut. It shall apply to cut and cover work of subway construction after the temporary cover has been placed.

GROUP 1(e) - WAGE RATE

EFFECTIVE DATE

| | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| RATE A | $23.19 | $23.19 | $ * | $ * | $ * |
| RATE B | $22.19 | $22.19 | $ * | $ * | $ * |

CLASSIFICATIONS OF GROUP 1(e)

Work on and/or in Bell Hole Footings and Shafts thereof, and work on and in Deep Footings (Deep Footing is a hole fifteen (15) feet or more in depth). In the event the depth of the footing is unknown at the commencement of excavation, and the final depth exceeds fifteen (15) feet, the contractor agrees to pay the deep footing wage rate to all employees for each and every day worked on or in the excavation of the footing from the date of inception.

All work in the construction of tunnels and shafts shall be performed in accordance with the provisions of the Laborers' Tunnel Master Agreement for Northern California and the Individual Employer agrees to comply with all of the provisions of said Tunnel Agreement in such work.

Shaft is an excavation over fifteen (15) feet deep of any type, generally vertical in nature, but may decline from the vertical, and whose depth is greater than its largest horizontal dimension. It is specifically understood that Bell Hole Footings and Deep Footings are subject to the provisions of this Agreement, and all Shafts, Stopes, Raises and Tunnels are subject to the provisions of the Tunnel Master Agreement specified herein.

GROUP 1(f) - WAGE RATE

Wire winding machine in connection with Guniting or Shot Crete.

EFFECTIVE DATE

| | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| Aligner- | | | | | |
| RATE A | $23.22 | $23.22 | $ * | $ * | $ * |
| RATE B | $22.22 | $22.22 | $ * | $ * | $ * |
| Helper- | | | | | |
| RATE A | $22.24 | $22.24 | $ * | $ * | $ * |
| RATE B | $21.24 | $21.24 | $ * | $ * | $ * |

GROUP 1(g) - WAGE RATES FOR CONTRA COSTA COUNTY

EFFECTIVE DATE

| | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| RATE | $22.84 | $22.84 | $ * | $ * | $ * |

CLASSIFICATIONS OF GROUP 1(g)

Pipelayers (including grade checking in connection with pipelaying)

30

Caulkers
Banders
Pipewrappers
Conduit Layers
Plastic Pipe Layer
Pressure Pipe Tester
No joint pipe and stripping of same, including repair of voids
Precast Manhole setters, cast in place manhole form setters

GROUP 1(h)

    Laborers working off or with or from Bos'n Chairs, Swinging Scaffolds, Belts shall
per hour above the applicable wage rate. This premium rate shall be reckoned by the end of
day. This shall not apply to Laborers entitled to receive the wage rate set forth in Gr

GROUP 2 - WAGE RATE

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/0 |  |
|---|---|---|---|---|---|
| RATE A | $22.49 | $22.49 | $ * | $ * | $ |
| RATE B | $21.49 | $21.19 | $ * | $ * | $ |

CLASSIFICATIONS OF GROUP 2

Asphalt Shovelers
Cement Dumpers and handling dry cement or gypsum Choke-setter and Rigger (clearing work
Concrete Bucket Dumper and Chuteman
Concrete Chipping and Grinding
Concrete Laborers (wet or dry)
Drillers Helper, Chuck Tender, Nipper (One chucktender on single machine
    minimum of one chucktender for each two machines on multiple ma
    (Jackhammers in no way involved in this item.)
Guinea Chaser (Stakeman), Grout Crew
High Pressure Nozzlemen, Adductors
Hydraulic Monitor (over 100 lbs. pressure)
Loading and unloading, carrying and handling of all rods and materials for use
    concrete construction
Pittsburgh Chipper, and similar type brush shredders
Sloper
Single foot, hand held, pneumatic tamper
All Pneumatic, Air, Gas and Electric Tools not listed in Groups 1 through 1(f)
Jacking of Pipe - under 12 inches

GROUP 3 - WAGE RATE

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28 |  |
|---|---|---|---|---|---|
| RATE A | $22.39 | $22.39 | $ * | $ * | $ |
| RATE B | $21.39 | $21.39 | $ * | $ * | $ |

CLASSIFICATIONS OF GROUP 3

Construction Laborers, including Bridge Laborers and General Laborers
Dumpman, Load Spotter
Flagperson
Fire Watcher
Fence Erectors
Forklift
Guardrail Erectors
Gardeners, Horticultural and Landscape Laborers (See Supplement No. 4)
Jetting
Limbers, Brush Loaders and Pilers
Pavement Markers (Button Setters)
Maintenance, Repair Trackmen and Road Beds
Pilot Car
Skip Loader (up to and including ½ Cubic Yard)
Streetcar and Railroad Construction Track Laborers
Temporary Air and Water Lines, Victaulic or similar
Tool Room Attendant (job site only)

GROUP 3(a) - WAGE RATE

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| RATE A | $22.39 | $22.39 | $ * | $ * | $ * |
| RATE B | $21.39 | $21.39 | $ * | $ * | $ * |

CLASSIFICATION OF GROUP 3(a)

Composite Crew Person - Shall apply only to the operation of vehicles, when operated in conjunction with Laborers duties.

GROUP 4 - WAGE RATE

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| RATE A | $16.08 | $16.08 | $ * | $ * | $ * |
| RATE B | $15.08 | $15.08 | $ * | $ * | $ * |

CLASSIFICATION OF GROUP 4

The Group 4 classification in this Agreement is intended to be utilized only in all final cleanup work of debris, grounds, and buildings, including but not limited to street cleaners. Laborers that are utilized in the Group 4 classification will continue to have the opportunity to accept or reject the employment offer according to Section 19 of the Laborers' Master Agreement. The Group 4 classification is a cleanup classification and shall not be utilized to undermine, modify, or change any of the current and traditional classifications currently utilized under the scope of this Agreement.

32

This clarification does not change or modify the current interpretation of this classification. It is agreed that the Group 4 classification is not applicable to engineering or heavy highway projects.

Cleaning & Washing Windows (subject to provisions of Section 20A)
Brick Cleaners (job site only)
Watchman (Subject to provisions of Section 20A)
Material Cleaners (job site only)

The classification "Material Cleaner" is to be utilized under the following conditions:
A. At demolition sites for the salvage of the material.
B. At the conclusion of a job where the material is to be salvaged and stocked to be reused on another job.
C. The cleaning of salvage material at the Employer's job site or temporary job site yard.
It was not the intent of either party to utilize the classification of "Material Cleaner" in the performance of "form stripping cleaning and oiling and moving to the next point of erection."

GROUP 5 - (Entry Level Laborer) WAGE RATES

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| 2,000 hours....................................................... | $11.40 | $11.40 | $ * | $ * | $ * |

At the discretion of the Employer, the scope of work includes, but is not limited to:
Tending other crafts
Watermeter Installer
Residential Laborer
An Individual Employer may employ two (2) Entry Level Laborers for every four (4) regular Laborers on his payroll. Provided; further, the second (2nd) Entry Level Laborer would be permitted on a job or project only after four (4) regular Laborers are on the job or project.

Each Entry Level laborer who completes the Basic Laborer Training Course at the Laborers' Training School shall receive three (3) months credit towards becoming a regular Laborer under the terms of this Agreement.

All other terms and conditions of this Agreement shall apply to all Entry Level Laborers. The provisions of this Group 5 shall not apply to the Tunnel Master Agreement.

# GUNITE, SHOTCRETE, PANELCRETE AND SIMILAR TYPE WORK INCLUDING ALL PLACING, FINISHING AND PATCHING OF SHOTCRETE OR GUNITE

Hours and working conditions and wages shall be the same as in this Master Agreement except those expressly herein provided.

CLASSIFICATIONS/RATES PER HOUR:

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | | |
|---|---|---|---|---|---|
| **Structural Nozzleman** | | | | | |
| RATE A | $23.60 | $23.60 | $ * | | |
| RATE B | $22.60 | $22.60 | $ * | | |
| **Nozzleman, Gunman and Potman** | | | | | |
| RATE A | $23.10 | $23.10 | $ * | | |
| RATE B | $22.10 | $22.10 | $ * | | |
| **Rodman** | | | | | |
| RATE A | $23.10 | $23.10 | $ * | | |
| RATE B | $22.10 | $22.10 | $ * | | |
| **Groundman** | | | | | |
| RATE A | $23.10 | $23.10 | $ * | | |
| RATE B | $22.10 | $22.10 | $ * | | |
| **Gunite Trainee**\*\* | | | | | |
| RATE A | $16.08 | $16.08 | $ * | | |
| RATE B | $15.08 | $15.08 | $ * | | |
| **Reboundman** | | | | | |
| RATE A | $22.51 | $22.51 | $ * | $ * | $ * |
| RATE B | $21.51 | $21.51 | $ * | $ * | $ * |
| **General Laborers** | | | | | |
| RATE A | $22.39 | 22.39 | $ * | $ * | $ * |
| RATE B | $21.39 | $21.39 | $ * | $ * | $ * |

\*\*One trainee shall be allowed for each three (3) Journeymen on a crew. In the absence of a Journeyman, the trainee shall receive the Journeyman scale.

| **Gunite Foreman** | | | | | |
|---|---|---|---|---|---|
| RATE A | $24.10 | $24.10 | $ * | $ * | $ * |
| RATE B | $23.10 | $23.10 | $ * | $ * | $ * |

**Travel from Jurisdiction of One Area to Another Area:**

The Employer shall have the right to bring six (6) workers from one area into another area within the area covered by this Agreement. Such Employer shall notify the Local Union one day in advance of starting the job. Other workers will be obtained when available from the area where the work is to be performed.

Case 3:07-cv-04820-SC    Document 10    Filed 10/26/2007    Page 45 of 71

**Travel and Out of Town Expense Allowance:**

All workers performing work covered by the Supplement at a job site located over sixty (60) miles from the main office or a permanently established district office of an Individual Employer shall receive a travel allowance as follows:

- If the employee uses or rides in an employer provided vehicle he/she will be reimbursed at the rate of twenty ($0.20) cents per mile measured from the employer's main office or permanently established district office.
- If the employee uses or rides in a vehicle not provided by the employer, he/she will be reimbursed at the rate of thirty ($0.30) cents per mile, which shall include all expenses including fuel.
- If the employer flies the employee to the jobsite, the employee will be reimbursed at the rate of five ($0.05) cents per mile.

Each worker performing work covered by this Agreement shall be reimbursed for the cost of meals and lodging actually expended and not to exceed forty-five dollars ($45.00) per day on all jobs located over one hundred twenty (120) miles from the main office or a permanently established district office of an Individual Employer. If the employer provides the lodging, the employee will be reimbursed at the rate of twenty dollars ($20.00) per day for meals only. This out of town expense will be paid only on the actual days that the employee spending the night out of town.

All projects bid or let prior to the effective date of this agreement shall be considered grandfathered, and therefore, subject to completion under the terms and conditions of the appropriate prior labor agreement.

Hours and working conditions and wages shall be the same as in this Master Agreement, except those expressly herein provided.

## CLASSIFICATIONS/RATES PER HOUR:

EFFECTIVE DATE

|  | 6/25/01 | 6/24/02 | 6/30/03 | 6/28/04 | 6/27/05 |
|---|---|---|---|---|---|
| Skilled Wrecker - Group No. 1 (Removing and salvaging of sash, windows, doors, plumbing and electric fixtures.) | | | | | |
| RATE A | $22.64 | $22.64 | $ * | $ * | $ * |
| RATE B | $21.64 | $21.64 | $ * | $ * | $ * |
| Semi-skilled Wrecker - Group No. 2 (Salvaging of other building materials) | | | | | |
| RATE A | $22.49 | $22.49 | $ * | $ * | $ * |
| RATE B | $21.49 | $21.49 | $ * | $ * | $ * |
| General Laborer - Group 4 (Includes all cleanup work, loading, lumber, loading and burning of debris) | | | | | |
| RATE A | $16.08 | $16.08 | $ * | $ * | $ * |
| RATE B | $15.08 | $15.08 | $ * | $ * | $ * |

Hours and working conditions and wages shall be the same as in this Master Agreement except those expressly herein provided.

CLASSIFICATION/RATES PER HOUR:

EFFECTIVE DATE

| | 6/25/01 | 6/24/02 | 6/30/03 | 6/28... | |
|---|---|---|---|---|---|
| Gardeners, Horticultural and Landscape Laborers (New Construction) | | | | | |
| RATE A ........................ | $22.39 | $22.39 | $ * | $ * | |
| RATE B ........................ | $21.39 | $21.39 | $ * | $ * | |
| | | | | | |
| Service Landscape Laborers (Establishment Warranty Period) | | | | | |
| RATE A ........................ | $16.08 | $16.08 | $ * | $ * | |
| RATE B ........................ | $15.08 | $15.08 | $ * | $ * | |

The overtime rates provided in paragraph 5 of Section 20A shall apply only to se... laborers (establishment warranty period) for work in excess of forty (40) hours in a... or in excess of eight (8) hours in any one day.

Service landscape laborers (establishment warranty period), may be required to work any five (5) days out of the week on any shift.

## LANDSCAPE LABORER TRAINEE

A new classification, Landscape Laborer Trainee, is based on an eighteen... program, as follows:

EFFECTIVE DATE

| | 6/25/01 | 6/24/02 | 6/30/03 | 6/28... | |
|---|---|---|---|---|---|
| RATE A | | | | | |
| 1st 6 mos. @ 70% ........................ | $15.67 | $15.67 | $ * | $ | |
| 2nd 6 mos. @ 80% ........................ | $17.91 | $17.91 | $ * | $ | |
| 3rd 6 mos. @ 90% ........................ | $20.15 | $20.15 | $ * | $ | |
| | | | | | |
| RATE B | | | | | |
| 1st 6 mos. @ 70% ........................ | $14.97 | $14.97 | $ * | $ | |
| 2nd 6 mos. @ 80% ........................ | $17.11 | $17.11 | $ * | $ | |
| 3rd 6 mos. @ 90% ........................ | $19.25 | $19.25 | $ * | $ * | |

(The above rates are wages only. Fringe Benefits are the same as in Se... Laborers' Master Agreement.)

Prior to employment, the Employer must submit in writing any request for... Local Union; and, all employees must be referred by the Local Union in the area...

The ratio of trainees shall be: One in three, with the understanding that each individual Contractor utilizing the Trainee Classification must employ at least one second period Trainee in the second period of the Agreement and at least one third period Trainee in the third period of the Agreement before being eligible to employ another first period trainee.

37

# SUPPLEMENT NO. 5
## LABORERS' APPRENTICESHIP PROGRAM

1.  **TERM OF APPRENTICESHIP:** The term of apprenticeship shall be 3,000 hours within 18 months. The first 750 hours, shall be a tryout or probationary period.

2.  **RATIO:** A qualified employer may employ one (1) apprentice when at least five (5) journeymen are regularly employed, and one (1) additional apprentice for each five (5) additional journeymen.

3.  **WORK TRAINING:** The Employer shall see that all apprentices are under the supervision of a qualified journeyman or instructor and shall provide the necessary diversified experience and training in order to train and develop the apprentice into a skilled worker, proficient in all the work processes of a Construction Craft Laborer, as outlined herein. Apprentices shall also be trained in the use of new equipment, materials and processes as they come into use in the craft.

4.  **WAGE SCHEDULE:** Apprentices shall be paid not less that the following percentages of the current journeymen's rate:

| | | | | | |
|---|---|---|---|---|---|
| 1st period | 1 | - | 500 | hours | 50% |
| 2nd period | 501 | - | 1000 | hours | 55% |
| 3rd period | 1001 | - | 1500 | hours | 60% |
| 4th period | 1501 | - | 2000 | hours | 70% |
| 5th period | 2001 | - | 2500 | hours | 80% |
| 6th period | 2501 | - | 3000 | hours | 90% |

5.  **FRINGE BENEFIT SCHEDULE:**

| | 1st 1500 hours | 2nd 1500 hours |
|---|---|---|
| Health & Welfare | Per Master Agreement | Per Master Agreement |
| Retiree Health & Welfare | Per Master Agreement | Per Master Agreement |
| Pension/Annuity | N/A | Per Master Agreement |
| Vacation | N/A | Per Master Agreement |
| Supplemental Dues | Per Master Agreement | Per Master Agreement |
| Training-Retraining/ Apprenticeship | Per Master Agreement | Per Master Agreement |
| Contract Administration | Per Master Agreement | Per Master Agreement |
| Industry Stabilization | Per Master Agreement | Per Master Agreement |

It is hereby agreed that effective June 24, 2002, Supplement No. 6, Subsistence of the Worker's Agreement shall read as follows:

MAP DESCRIPTION FOR AREA FREE ZONE AND SUBSISTENCE ZONE

The following is a description based upon township and Area free zones and Area free zones for all of Northern California within the following lines:

Commencing in the Pacific Ocean on the extension of the Southerly line of T
Thence Easterly along the Southerly line of Township 19S, crossing the Mt. Diablo meridian to the
    S.W. Corner of township 19S, range 6E, Mt. Diablo base line and meridian
Thence Southerly to the S.W. corner of township 20S, range 6E,
Thence Easterly to the S.W. corner of township 20S, range 13E,
Thence Southerly to the S.W. corner of township 21S, range 13E,
Thence Easterly to the S.W. corner of township 21S, range 17E,
Thence Southerly to the S.W. corner of township 22S, range 17E,
Thence Easterly to the S.E. corner of township 22S, range 17E,
Thence Southerly to the S.W. corner of township 23S, range 18E,
Thence Easterly to the S.E. corner of township 23S, range 18E,
Thence Southerly to the S.W. corner of township 24S, range 19E, falling on the S
    Kings County, thence Easterly along the Southerly boundary of Kings
    boundary of Tulare County, to the S.E. corner of township 24S, range 29E
Thence Northerly to the N.E. corner of township 21S, range 29E,
Thence Westerly to the N.W. corner of township 21S, range 29E,
Thence Northerly to the N.E. corner of township 13S, range 28E,
Thence Westerly to the N.W. corner of township 13S, range 28E,
Thence Northerly to the N.E. corner of township 11S, range 27E,
Thence Westerly to the N.W. corner of township 11S, range 27E,
Thence Northerly to the N.E. corner of township 10S, range 26E,
Thence Westerly to the N.W. corner of township 10S, range 26E,
Thence Northerly to the N.E. corner of township 9S, range 25E,
Thence Westerly to the N.W. corner of township 9S, range 25E,
Thence Northerly to the N.E. corner of township 8S, range 24E,
Thence Westerly to the N.W. corner of township 8S, range 24E,
Thence Northerly to the N.E. corner of township 6S, range 23E,
Thence Westerly to the S.E. corner of township 5S, range 19E,
Thence Northerly to the N.E. corner of township 5S, range 19E,
Thence Westerly to the N.W. corner of township 5S, range 19E,
Thence Northerly to the N.E. corner of township 3S, range 18E,
Thence Westerly to the N.W. corner of township 3S, range 18E,
Thence Northerly to the N.E. corner of township 2S, range 17E,
Thence Westerly to the N.W. corner of township 2S, range 17E,
Thence Northerly crossing the Mt. Diablo baseline to the N.E. corner of township 2N, range 16E
Thence Westerly to the N.W. corner of township 2N, range 16E,
Thence Northerly to the N.E. corner of township 3N, range 15E,
Thence Westerly to the N.W. corner of township 3N, range 15E,

Thence Northerly to the N.E. corner of township 4N, range 14E,
Thence Westerly to the N.W. corner of township 4N, range 14E,
Thence Northerly to the N.E. corner of township 5N, range 13E,
Thence Westerly to the N.W. corner of township 5N, range 13E,
Thence Northerly to the N.E. corner of township 10N, range 12E,
Thence Easterly to the S.E. corner of township 11N, range 14E,
Thence Northerly to the N.E. corner of township 11N, range 14E,
Thence Westerly to the N.E. corner of township 11N, range 10E,
Thence Northerly to the N.E. corner of township 15N, range 10E,
Thence Easterly to the S.E. corner of township 16N, range 11E,
Thence Northerly to the N.E. corner of township 16N, range 11E,
Thence Easterly to the S.E. corner of township 17N, range 14E,
Thence Southerly to the S.W. corner of township 14N, range 15E,
Thence Easterly to the S.E. corner of township 14N, range 15E,
Thence Southerly to the S.W. corner of township 13N, range 16E,
Thence Easterly to the S.E. corner of township 13N, range 16E,
Thence Southerly to the S.W. corner of township 12N, range 17E,
Thence Easterly along the Southern line of township 12N to the Eastern boundary of the State of California,
Thence Northwesterly, thence Northerly along the Eastern boundary of the State of California to the N.E. corner of township 17N, range 18E,
Thence Westerly to the N.W. corner of township 17N, range 11E,
Thence Northerly to the N.E. corner of township 20N, range 10E,
Thence Westerly to the N.W. corner of township 20N, range 10E,
Thence Northerly to the N.E. corner of township 21N, range 9E,
Thence Westerly to the N.W. corner of township 21N, range 9E,
Thence Northerly to the N.E. corner of township 22N, range 8E,
Thence Westerly to the N.W. corner of township 22N, range 8E,
Thence Northerly to the S.W. corner of township 27N, range 8E,
Thence Easterly to the S.E. corner of township 27N, range 8E,
Thence Northerly to the NE corner of township 28N, range 8E,
Thence Westerly to the N.W. corner of township 28N, range 7E,
Thence Northerly to the N.E. corner of township 30N, range 6E,
Thence Westerly to the N.W. corner of township 30N, range 1E,
Thence Northerly along the Mt. Diablo meridian to the N.E. corner of township 34N, range 1W,
Thence Westerly to the N.W. corner of township 34N, range 6W,
Thence Southerly to the N.E. corner of township 32N, range 7W,
Thence Westerly to the N.W. corner of township 32N, range 7W,
Thence Southerly to the S.W. corner of township 30N, range 7W,
Thence Easterly to the S.E. corner of township 30N, range 7W,
Thence Southerly to the S.W. corner of township 16N, range 6W,
Thence Easterly to the S.E. corner of township 16N, range 6W,
Thence Southerly to the S.W. corner of township 14N, range 5W,
Thence Westerly to the S.E. corner of township 14N, range 7W,
Thence Northerly to the N.E. corner of township 14N, range 7W,
Thence Westerly to the N.W. corner of township 14N, range 7W,
Thence Northerly to the N.E. corner of township 15N, range 8W,
Thence Westerly to the S.E. corner of township 16N, range 12W,
Thence Northerly to the N.E. corner of township 16N, range 12W,

40

Thence Westerly to the N.W. corner of township 16N, range 12W,

Thence Northerly to the N.E. corner of township 18N, range 12W,
Thence Westerly to the N.W. corner of township 18N, range 14W,
Thence Southerly to the S.W. corner of township 18N, range 14W,
Thence Easterly to the S.E. corner of township 18N, range 14W,
Thence Southerly to the S.W. corner of township 16N, range 13W,
Thence Westerly to the N.W. corner of township 15N, range 14W,
Thence Southerly to the S.W. corner of township 14N, range 14W,
Thence Easterly to the S.E. corner of township 14N, range 14W,
Thence Southerly to the S.W. corner of township 13N, range 13W,
Thence Easterly to the S.E. corner of township 13N, range 13W,
Thence Southerly to the S.W. corner of township 11N, range 12W,
Thence Easterly to the S.E. corner of township 11N, range 12W,
Thence Southerly along the Eastern line of range 12W to the Pacific Ocean, ex... ... ...tion
    of Northern California within Santa Clara County included within the ... ... ...
    Commencing at the N.W. corner of township 6S, range 3E, Mt. Diablo Ba... ... ...
Thence in a Southerly direction to the S.W. corner of township 7S, range 3E,
Thence in an Easterly direction to the S.E. corner of township 7S, range 4E,
Thence in a Northerly direction to the N.E. corner of township 6S, range 4E,
Thence in a Westerly direction to the N.W. corner of township 6S, range 3E, to the point of
    beginning, which portion is a part of Area 2.
    Area 1 also includes that portion of Northern California within the following li...
Commencing in the Pacific Ocean on an extension of the Southerly line of townshi... ... ...
    baseline and meridian:
Thence Easterly along the Southerly line of township 2N, to the S.W. corner ... ... ...
    1W,
Thence Southerly to the S.W. corner of township 1N, range 1W,
Thence Easterly along the Humboldt baseline to the S.W. corner of townshi... ... ...
Thence Southerly to the S.W. corner of township 2S, range 2E,
Thence Easterly to the S.E. corner of township 2S, range 2E,
Thence Southerly to the S.W. corner of township 4S, range 3E,
Thence Easterly to the S.E. corner of township 4S, range 3E,
Thence Northerly to the N.E. corner of township 2S, range 3E,
Thence Westerly to the N.W. corner of township 2S, range 3E,
Thence Northerly crossing the Humboldt baseline to the S.W. corner of township 1N, range 3E,
Thence Easterly along the Humboldt baseline to the S.E. corner of townsh... ... ...
Thence Northerly to the N.E. corner of township 9N, range 3E,
Thence Westerly to the N.W. corner of township 9N, range 2E,
Thence Northerly to the N.E. corner of township 10N, range 1E,
Thence Westerly along the Northerly line of township 10N, into the Pacifi... ... ...

    Subsistence map change shall apply for work bid after June 16, 1980.
    All areas other than free zones shall be subject to the payment of subs... ...
    On all work subject to travel and subsistence allowance specified in this ... ...
subsistence allowance shall be as follows:
    June 24, 2002 through June 30, 2006 - $19.00/day.
    The Individual Employer shall not be required to pay subsistence to employe... ... ...
Individual Employer in a permanent yard or shop or plant and employees employed by an Individual
Employer on residential construction projects (not camps); subdivisions; buildings of three (3)

41

stories or less including utilities and site work related to these buildings; streets, roadways and utilities which are a part of a residential construction project.

Subsistence shall not be applicable within the city limits of the following cities or towns:

Auburn, Coalinga, Crescent City, Exeter, Grass Valley, Greenfield, Jackson, Jamestown, Lindsay, Mariposa, Nevada City, Placerville, Porterville, Sonora, Strathmore, Terrabella, Tuolumne, Twain Harte, Woodlake or Yreka.

Subsistence shall apply to publicly financed camps, highways, dams, tunnels, power facilities, defense facilities, utilities (except as provided above), sewage disposal plants and heavy engineering projects together with the camps, warehouses, offices or facilities constructed in connection with such latter projects, such pay shall be separate from the wages of the employee and shall be paid him/her by separate check.

No subsistence shall be paid on a job located within the right of way of a road or highway forming part of the boundary of a subsistence area.

If a road or highway forming part of the boundary of a subsistence area is relocated, such relocated road or highway upon being officially opened shall form a part of the boundary of the subsistence area in place of the old road.

When the work is to be performed in the subsistence zone, each employee employed to perform work covered by this Agreement shall receive subsistence pay specified herein.

When the work to be performed is in the non-subsistence zone, such employees shall not be entitled to receive subsistence pay; provided, however, if two or more hours of compensable time (straight time or premium time) are worked by said employee in the subsistence zone, he/she shall be entitled to be paid appropriate subsistence pay as specified herein for the entire day. An employee or person referred for employment shall be entitled to subsistence pay for any day on which he/she is required by or requested to report to the job of the Individual Employer, but does not perform work due to conditions beyond said Individual Employer's control (such as: rainy days, or days when steel or other materials are not available).

If the Individual Employer maintains a camp in the subsistence area herein above described, the Individual Employer agrees not to charge the employees covered by this Agreement more than the amount allowed for subsistence hereunder for suitable room and board incurred during a calendar week.

42

**SCHEDULE "A"**

## DISTRICT COUNCIL OF LABORERS HIRING HALL LOCATIONS

| Local | City | Street Address | Phone Number | Dispatch Hours |
|---|---|---|---|---|
| *67 | Oakland | 8400 Enterprise Way, #119 | 510/569-4761 | 6:30-9:00 a.m. |
| *67 | Sacramento | 2717 Cottage Way, #12 | 916/482-2607 | 6:30-9:00 a.m. |
| 73 | Stockton | 2841 E. Myrtle St. | 209/466-3356 | 6:30-9:00 a.m. |
| 139 | Santa Rosa | 81 Barham Avenue | 707/542-1107 | 6:30-9:00 a.m. |
| 185 | Sacramento | 1320 W. National Drive | 916/928-8300 | 6:30-9:00 a.m. |
| 185 | Redding | 2865 Churn Creek Rd., #D | 530/221-0961 | 6:30-9:00 a.m. |
| 185 | Yuba City | 1650 Sierra Ave., #206 | 530/674-4707 | 6:30-9:00 a.m. |
| 261 | San Francisco | 3271 - 18th St. | 415/826-4550 | 6:30-9:00 a.m. |
| 270 | San Jose | 509 Emory St. | 408/297-2620 | 6:30-9:00 a.m. |
| 270 | Santa Cruz | 640 Eaton St. | 831/475-7058 | 6:30-9:00 a.m. |
| 291 | San Rafael | 4174 Redwood Hwy. | 415/492-0936 | 6:30-9:00 a.m. |
| 291 | Napa | (Phone dispatch only) | 707/226-7971 | 6:30-9:00 a.m. |
| 294 | Fresno | 5431 E. Hedges Ave. | 559/255-3019 | 6:30-9:00 a.m. |
| 294 | Visalia | 319 N. Church Street | 559/734-9426 | 6:30-9:00 a.m. |
| 297 | Salinas | 117 Pajaro St. | 831/422-7077 | 6:30-9:00 a.m. |
| 297 | Monterey | 254 Casa Verde Way | 831/648-1081 | 6:30-9:00 a.m. |
| 304 | Hayward | 29475 Mission Blvd. | 510/581-4681 | 6:30-9:00 a.m. |
| 304 | Oakland | 425 Roland Way | 510/562-2662 | 6:30-9:00 a.m. |
| 304 | Livermore | 2063 Research Drive | 925/455-8292 | 6:30-9:00 a.m. |
| 324 | Martinez | 611 Berrellesa St. | 925/228-0930 | 6:30-9:00 a.m. |
| 324 | Pittsburg | 1085 Cumberland St. | 925/439-1021 | 6:30-9:00 a.m. |
| 324 | Richmond | 101 So. 12th St. | 510/234-1069 | 6:30-9:00 a.m. |
| 326 | Vallejo | 2920 Sonoma Blvd., Suite B | 707/643-7214 | 6:30-9:00 a.m. |
| 389 | San Mateo | 300 - 7th Street | 650/344-7168 | 6:30-9:00 a.m. |
| 1130 | Modesto | 2549 Yosemite Blvd., Ste. K | 209/521-9883 | 6:30-9:00 a.m. |

* Asbestos

Northern California District Council of Laborers
Union Plaza
4780 Chabot Drive, Suite 200
Pleasanton, CA 94588
(925) 469-6800
Fax (925) 469-6900
Office Hours: 7:00 am to 5:00 pm Monday through Friday

# EXHIBIT B

SETTLEMENT AGREEMENT

A dispute has arisen between the Employer. AJW Paving & Grading, and the Union, Laborers' Local 304, regarding the claims by the employees named below, not to have received full and proper compensation for all hours worked.

Because of the difficulty involved in ascertaining with accuracy, the correctness of these claims, and because of the costs and limitations of litigation, the parties have agreed to resolve the matter as follows:

1.    The Employer will post and promulgate a revised policy regarding timekeeping and compensation to ensure that employees are compensated for all hours worked and that employees do not claim hours which they have not worked.  Such revised policy shall be put in place on or before March 26, 2007.

2.    The policy will include a method of chain of command for employees to address and rectify any inaccuracies or deficiencies in the Employer's recordkeeping in regard to hours worked and compensation thereof.

A written copy of this policy shall be furnished to Local 304 forthwith.

3.    The employees listed below have claimed shortages under the present policies. The Employer disputes the employees' claims.  Because of the passage of time and the difficulties of ascertaining or evaluating their claims, or any amount due, in order to resolve disputed claims, the Employer agrees to compensate each of the following individuals in the amount of twenty five hundred dollars ($2,500.00) in back wages: Armando Loza, Hipolito Acosta, Jesus Acosta, Enrique Jauregui, Ricardo Munguia, Filemon Garcia and Everardo Villa.

4.    The Employer shall make the appropriate federal and state withholdings from these amounts.  Upon the employees having received such compensation, the Union will withdraw with prejudice any and all grievances relating to these alleged underpayments and will relinquish any and all claims for such alleged underpayment.

5.    As a condition of receiving said compensation, each of the named employees must waive, relinquish and release any and all claims ("Release Claims") against the Employer arising under California or federal law concerning their wages through the date of this Agreement other than claims for any wages due for the payroll period ending March 23, 2007.

AJW000001

6.     By entering into this Agreement, the Employer admits no violations of the law or the collective bargaining agreement.

7.     Provided the Union and the below named employees have signed this Agreement, which includes a general release, and the employees having signed a general release, the Employer shall make the payments specified above, on or before April 1, 2007.

8.     In the event any of the below listed employees initiate any claim against the Employer encompassed by this Agreement they shall be required to repay the Employer all amounts received by the employee pursuant to this Agreement plus any attorneys' fees incurred by the Employer to enforce this Agreement.

AJW PAVING & GRADING

DATE: 4-25-07

NORTHERN CALIFORNIA DISTRICT
COUNCIL OF LABORERS

DATE: 7/15/07

LABORERS' LOCAL 304

DATE: _____

ARMANDO LOZA

DATE: _____

HIPOLITO ACOSTA

DATE: 3-29-07

JESUS ACOSTA

DATE: _____

ENRIQUE JAUREGUI

DATE: _____

RICARDO MUNGUIA

DATE: _____

FILEMON GARCIA

DATE: _____

EVERARDO VILLA

DATE: _____

AJW000002

## ACUERDO DE ARREGLO

Una situación de conflicto a surgido entre el empleador, AJW Paving & Grading, y la Unión Local De Los Obreros #304, considerando los reclamos de parte de los empleados cuyos nombres aparecen abajo, no haber recibido la compensación completa y apropiada por todas las horas trabajadas.

A causa de la dificultad implicada en acertar con certeza, la exactitud de estos reclamos, y a causa de los costos y limitaciones del pleito, los partidos han acordado en resolver el asunto de la siguiente manera.

1.    El empleador anunciará y promulgará una póliza revisada considerando el mantenimiento de archivos de horas trabajadas y compensación para asegurar que los empleados sean compensados por todas las horas trabajadas y que los empleados no reclamen horas que ellos no han trabajado. Tal póliza revisada se pondrá en efecto en o antes del Marzo 26, 2007.

2.    La póliza incluirá un método de reglas para los empleados para revisar y rectificar cualquier inexactitud o diferencias en los archivos del empleador acerca de las horas trabajadas y compensación del mismo.

Una copia escrita de esta póliza será proporcionada al Local 304 en el acto.

3.    Los empleados en la lista que aparece abajo han reclamado escaseces bajo la presente póliza. El empleador contradice los reclamos de los empleados. A causa del paso del tiempo y las irregularidades para acertar o evaluar sus reclamos o cualquier cantidad pendiente, para resolverse los reclamos, el empleador concuerda en compensar cada uno de ellos en la cantidad de dos mil quinientos dólares ($2500.00) en sueldos atrasados, a los siguientes empleados: Armando Loza, Hipólito Acosta, Jesús Acosta, Enrique Jáuregui, Ricardo Munguía, Filemón García y Everardo Villa.

4.    El empleador hará las contribuciones apropiadas para las deducciones Federales y Estatales basadas en esta cantidad. Una vez que los empleados hayan recibido tal compensación, La Unión retirará con el prejuicio cualquier y todas las quejas que sean relacionadas a estos pagos inferiores a lo establecido y abandonará cualquier y todos reclamos para tales pagos inferiores a lo establecido.

5.    Como condición por haber recibido la compensación acordada, cada empleado debe renunciar, abandonar y liberar cualquier y todos los reclamos (Reclamos Liberados) en contra el empleador. Surgiendo bajo la ley estatal o federal de California con respecto a sus sueldos por la fecha de este acuerdo en lugar de reclamos por cualquier sueldo debido por el periodo de pago terminando en Marzo 23, 2007.

6.    Entrando en este acuerdo, el empleador admite no haber violado las leyes o el acuerdo de negociación colectiva.

7.    Proporcionando la Unión y los empleados denominados han firmado este acuerdo y los empleados han firmado una liberación general, el empleador deberá hacer los pagos en este acuerdo, en o antes de Abril 1, 2007.

AJW000003

8.    · En el evento de que cualquiera de los empleados en la lista de abajo decida iniciar un reclamo en contra del empleador abarcado por este acuerdo ellos serán requeridos a devolver el dinero al empleador, toda la cantidad recibida por el empleado conforme a este acuerdo más cualquier honorarios de abogado contraídos por el empleador para imponer este acuerdo.

AJW PAVING & GRADING

DATE: 4·25·07

NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS

DATE: 4/18/07

LABORERS' LOCAL 304

DATE: _____

ARMANDO LOZA

DATE: _____

HIPOLITO ACOSTA

DATE: 3-29-07

JESUS ACOSTA

DATE: _____

ENRIQUE JAUREGUI

DATE: _____

RICARDO MUNGUIA

DATE: _____

FILEMON GARCIA

DATE: _____

EVERARDO VILLA

DATE: _____

AJW000004

## GENERAL RELEASE

A dispute has arisen between the Employer, AJW Paving & Grading, and employee, HIPOLITO ACOSTA, regarding the proper payment of wages and premium pay. The parties have resolved to settle this dispute without litigation as follows:

1. AJW Paving & Grading will pay twenty five hundred dollars ($2,500.00) in back pay less appropriate withholdings;

2. HIPOLITO ACOSTA will withdraw, release and relinquish any and all claims he has or may have against AJW Paving & Grading, arising on or before the date of this release, including any and all grievances, claims, unfair labor practice charges and/or causes of action, known or unknown;

3. By executing the Agreement between AJW Paving & Grading and Laborers' Local 304, I, HIPOLITO ACOSTA, expressly waive the benefits of and release any rights I would otherwise have under California Civil Code Section 1542 or any comparable federal or state statute or rule of law. Section 1542 provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by his must have materially affected his settlement with the debtor".

4 By entering this Agreement, AJW admits no violation of the law or the collective bargaining agreement;

5. By entering into this Agreement, HIPOLITO ACOSTA expressly waives his right to bring any claim, action, suit, charge, grievance, or administrative complaint against AJW over any conduct occurring prior to the date of this Agreement.

6. The Union, Laborers' Local 304, hereby withdraws with prejudice, its grievance arising out of the claims that the Employer has not correctly compensated employees for their services (excluding Juan Rodriguez).

Dated: 3-29-07

HIPOLITO ACOSTA

Dated: 4-25-07

AJW PAVING & GRADING

Dated: _____

LABORERS' LOCAL 304

## LIBERACION GENERAL

Una situación de conflicto ha surgido entre el empleador, AJW Paving & Grading, y el empleado Hipolito Acosta, con respecto al pago apropiado de la paga de sueldos y pago principal. Los partidos han llegado a un acuerdo para resolver este conflicto de la siguiente manera:

1.      AJW Paving & Grading pagara dos mil quinientos dólares ($2500 ...) atrasados menos la cantidad apropiada en deducciones.

2.      Hipolito Acosta retirará, liberará y abandonará cualquier y todos reclamos que tiene o puede tener en contra de AJW Paving & Grading, surgiendo en o antes de la ... esta liberación, incluyendo cualquier y todas las quejas, los reclamos la práctica injusta del trabajo carga y las causas de/o la acción, conocidas o desconocidas.

3.      Al ejecutar el acuerdo entre AJW Paving & Grading y la Unión Local De Los Obreros 304, yo, Hipolito Acosta, determinadamente renuncio a los beneficios y libe... derecho que yo de otro modo tendría bajo el código Civil de la Sección 1542 California o cualquier otra regla o ley comparable con la sección 1542:

"Una Liberación General no extiende los reclamos los cuales el acreedor no sabe ni sospecha que existen en su favor en el tiempo de ejecutar la Liberación General, lo ... por ella debe haber afectado sustancialmente su arreglo con el deudor."

4.      Entrando en este acuerdo, el empleador admite no haber violado las leyes ... acuerdo de negociación colectiva.

5.      Entrando en este acuerdo, Hipolito Acosta determinadamente renuncia a sus derechos de continuar con el reclamo, la acción, el juicio, la carga, o la queja administra... contra de AJW sobre cualquier conducta que haya antes de la fecha de este acuer...

6.      La Unión Local De Los Obreros 304, por este medio retira con el pre... agravio que proviene de las reclamaciones que el empleador no ha compensado c... a sus empleados por sus servicios. (Excluyendo Juan Rodríguez).

Dated: 3-29-07                          _Hipoleto Acosta_
                                        HIPOLITO ACOSTA

Dated: 4-25-07                          _____
                                        AJW PAVING & GRADING

Dated: _____              _____
                                        LABORERS' LOCAL 304

AJW 000006

PAUL V. SIMPSON, BAR NO. 83878
JAMIE RUDMAN, BAR NO. 166727
KENDALL M. BURTON, BAR NO. 228720
SIMPSON, GARRITY & INNES
Professional Corporation
601 Gateway Boulevard, Suite 950
South San Francisco, CA 94080
Telephone: (650) 615-4860
Fax: (650) 615-4861

Attorneys for Defendant AJW Construction, Inc.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIPOLITO ACOSTA, JESUS ACOSTA, FILEMON GARCIA, ENRIQUE JAUREGUI, SAUL LOZANO, RICARDO MUNGUIA, JUAN M. NAVARRO, JUAN RODRIGUEZ; EVERARDO VILLA, <br><br> Plaintiffs, <br><br> v. <br><br> AJW CONSTRUCTION, a California corporation; and DOES I through XX, <br><br> Defendant. | Case No. 07-04829 SC <br><br> **DECLARATION OF ALFONSO QUINTOR IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEYS FEES AND COSTS** <br><br> Date: November 16, 2007 <br> Time: 10:00 a.m. <br> Place: Courtroom 1, San Francisco <br> Hon. Samuel Conti |

I, Alfonso Quintor, do hereby declare and state:

1.     I am the President of AJW Construction, Inc. ("AJW"), which is located at 966-81st Avenue in Oakland, California. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.     At all relevant times, Plaintiffs Hipolito Acosta, Jesus Acosta, Filemon Garcia, Enrique Jauregui, Saul Lozano, Ricardo Munguia, Juan M. Navarro, Juan Rodriguez, and Everardo Villa's employment with AJW was governed by a collective bargaining agreement

DECLARATION OF ALFONSO QUINTOR IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEY FEES AND COSTS

1  between AJW and the Northern California District Council of Laborers. A true and correct copy
2  of the collective bargaining agreement is attached to this declaration as Exhibit A.

3      3.      The collective bargaining agreement governing Plaintiffs' employment with AJW
4  establishes several employee benefits, such as health and welfare, pension and paid vacation
5  time/holidays, pursuant to a jointly administered multi-employer employee benefit plan regulated
6  by the Employment Retirement and Income Security Act of 1974 ("ERISA"). AJW does not have
7  a separate vacation or paid time off policy for any of its Union employees, including Plaintiff. All
8  of the Plaintiffs accrued paid time off or vacation pay through the employee benefit plan
9  established by Section 28A of the collective bargaining agreement between AJW and the Northern
10  California District Council of Laborers.

11      4.      Plaintiffs Hipolito Acosta, Jesus Acosta, Enrique Jauregui, Ricardo Munguia,
12  Filemon Garcia and Everardo Villa signed an agreement negotiated by their Union, Laborers'
13  Local 304, and its attorney on their behalf settling claims for unpaid wages against AJW in March
14  2007. A sample of one of the settlement agreements signed by the Plaintiffs is attached to this
15  declaration as Exhibit B.

16      I declare under penalty of perjury under the laws of the State of California that the
17  foregoing is true and correct. Executed this 25 day of October 2007, at Oakland, California.

18
19
20          Alfonso Quintor
21
22
23
24
25
26
27
28

{CLIENT FILES\20444\5\00080835.DOC}
                                                                    - 2 -
DECLARATION OF ALFONSO QUINTOR IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND REMOVED
ACTION AND FOR ATTORNEY FEES AND COSTS

# EXHIBIT C

# SIMPSON, GARRITY & INNES

PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
601 GATEWAY BOULEVARD, SUITE 950
SOUTH SAN FRANCISCO, CALIFORNIA 94080
TELEPHONE: (650) 615-4860
FACSIMILE: (650) 615-4861
WWW.SGILAW.COM

PAUL V. SIMPSON
PSIMPSON@SGILAW.COM

CONFERENCE FACILITIES
AVAILABLE IN SAN JOSE,
PLEASANTON & MARIN

August 28, 2007

John E. Hill, Esq.
Law Offices of John E. Hill
8105 Edgewater Drive, Suite 100
Oakland, CA 94621

Re:    Acosta, et al. v. AJW Construction, Inc.
       Alameda County Superior Court Case No. RG-07-341397
       Our File #20444-5

Dear Mr. Hill:

The undersigned represents AJW Construction, Inc. in connection with the above-referenced civil action. Please direct all future communications concerning this matter to my attention.

At all times material herein the Plaintiffs' employment conditions were governed by the terms of the collective bargaining agreement between Defendant and the Northern California District Council of Laborers. Plaintiffs have asserted claims that are preempted by Section 301 of the Labor Management Relations Act and ERISA. Defendant anticipates removing the lawsuit to federal court absent its resolution by September 10, 2007.

In addition to the preemption defenses, Plaintiffs Hipolito Acosta, Jesus Acosta, Filemon Garcia, Enrique Jauregui, Ricardo Munguia, Juan Rodriguez, and Everardo Villa entered into enforceable settlement agreements resolving all claims encompassed by the Complaint. The settlement agreements were negotiated on their behalf by legal counsel for their union. The settlement agreements were entered into knowingly and voluntarily. The agreements were presented and signed in English and Spanish. Settlement checks were issued and presented to Plaintiffs' union agent for distribution. The union returned the uncashed checks to my client when Plaintiffs' did not pick them up. Please distribute the enclosed settlement checks to your clients. Please have them execute the enclosed Acknowledgment and Receipts and return them to my office. Regardless of whether they cash the settlement checks, the settlement agreements constitute binding accords and satisfaction foreclosing their claims.

Please also note that your clients are subject to payment of AJW Construction, Inc.'s attorneys' fees pursuant to Labor Code section 218.5 should my client prevail in the action.

In addition to the foregoing, Plaintiffs executed acknowledgments confirming they were paid for hours worked and received meal and rest periods. Enclosed is a representative sampling of the acknowledgments executed by each of the Plaintiffs.

In summation, I do not believe there is probable cause for proceeding with the lawsuit against Defendant. I respectfully request that Plaintiffs file a dismissal of the action before my client incurs further legal fees in connection with this case.

If you would like to discuss this matter informally, I welcome the opportunity to meet with you next week. I look forward to hearing from you.

Very truly yours,

Paul V. Simpson

PVS/tk
Enclosures
cc:    AJW Construction, Inc. (w/o enclosures)
        Attn: Alfonso Quintor

# EXHIBIT D

# LAW OFFICES OF JOHN E. HILL

### A PROFESSIONAL CORPORATION

John F. Hill *
Daniel A. Stenson
Michael P. Guta
Ian M. Cooper
Mark J. Shostak
Inna Bimits
Joanne A. Helvig

Of Counsel
Melvin M. Belli (1907-1996)

*Certified Specialist: Civil Trial Advocate
Certified by National Board of Trial Advocacy
Accredited by State Bar of California

**ATTORNEYS AT LAW**

8105 Edgewater Drive, Suite 100
Oakland, California 94621-2017
Telephone (510) 588-1000
General Facsimile (510) 729-6333
E-mail: johnhill@hill-law-offices.com

San Francisco Office
747 Leavenworth Street
San Francisco, California 94109
Telephone (415) 198-2434
Facsimile (415) 192-2809

Los Angeles Office
1112 11ᵗʰ Street, Suite 3
Santa Monica, California 90403
Telephone: 310-160-2100

August 29, 2007

## TRANSMITTED BY FACSIMILE

Paul Simpson, Esq.
SIMPSON, GARRITY & INNES
501 Gateway Boulevard, Ste 950
South San Francisco, CA 94080

    Re:    *Acosta, et al. v. AJW Construction,* No. RG 07341397

Dear Mr. Simpson:

    I am in receipt of your letter of August 28, 2007 claiming Plaintiffs' causes of action are barred by a Settlement negotiated by Plaintiffs' collective bargaining agent. Please be advised that any agreement purportedly reached by the employer and the collective bargaining agent for the benefit of the individual Plaintiffs cannot affect the individual Plaintiffs' rights to wages earned and payable to the individual Plaintiff. [*Barrentine v. Arkansas-Best Freight Systems, Inc.* (1981) 450 U.S. 728, 745; *Local 246, Utility Workers Union v. Southern Cal. Edison Company* (9ᵗʰ Cir. 1996) 83 F.3d 292]

    If you attempt to remove this matter to Federal court, we will move to remand the matter as being improvidently removed, and this correspondence is our notice to you that such an action on your part would be frivolous and in violation of Federal Rule of Civil Procedure 11, in addition to the attorney's fees awardable for actions improvidently removed. An individual's wage claim does not implicate the collective bargaining agreement and there would be no Federal jurisdiction for a wage claim for California residents employed in California.

Letter/fax to Paul Simpson, Esq.
August 29, 2007
Page -2-


As far as your interest in discussing this matter, if you have a new interest in discussing this matter, I would be happy to do so.

Very truly yours,

Michael P. Guta

MPG/m

07 0829 3

# FAX TRANSMITTAL COVER SHEET

## LAW OFFICES OF JOHN E. HILL
**8105 Edgewater Drive**
**Oakland, CA 94621**
**Telephone: (510) 588-1000**
**FAX No. (510) 729-6333**

**DATE:**      ~~July 20~~ 8/29, 2007

**TO:**      Paul Simpson, Esq.

**cc:**

**PHONE:**

**FAX NO.**      650-615-4861

**RE:**      **Acosta v. AJW Construction**

**FROM:**      **Mike, for Michael P. Guta, Esq.**

**CC:**

**TOTAL PAGES   3   (Including cover page)**

**A letter from Michael P. Guta, Esq. follows. A first class copy will NOT follow.**

### Thank you very much.

The information contained in this Facsimile Cover Sheet and any documents accompanying it are privileged and confidential information and are only for the use of the intended recipient named on the "TO:" line above. If you are not the intended recipient, or the employee or agent responsible to deliver this Cover Sheet and documents to the intended recipient, any disseminating, distributing or copying of this communication is neither intended, nor allowed. If you have received this fax in error, please notify us immediately by telephone at (415) 398-2434 and return the original and any copies of this Cover Sheet and documents that accompany it by mail. Thank you.

60116/e

PAUL V. SIMPSON, BAR NO. 83878
JAMIE RUDMAN, BAR NO. 166727
KENDALL M. BURTON, BAR NO. 228720
SIMPSON, GARRITY & INNES
Professional Corporation
601 Gateway Boulevard, Suite 950
South San Francisco, CA 94080
Telephone: (650) 615-4860
Fax: (650) 615-4861

Attorneys for Defendant AJW Construction, Inc.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIPOLITO ACOSTA, JESUS ACOSTA, FILEMON GARCIA, ENRIQUE JAUREGUI, SAUL LOZANO, RICARDO MUNGUIA, JUAN M. NAVARRO, JUAN RODRIGUEZ; EVERARDO VILLA, <br><br> Plaintiffs, <br><br> v. <br><br> AJW CONSTRUCTION, a California corporation; and DOES I through XX, <br><br> Defendant. | Case No. C-07-04829 SC <br><br> **CERTIFICATE OF SERVICE OF NOTICE TO PLAINTIFF OF REMOVAL TO FEDERAL COURT** |

I, the undersigned, hereby declare that I am over the age of eighteen years and not a party to the within action. My business address is Simpson, Garrity & Innes, Professional Corporation, 601 Gateway Boulevard, Suite 950, South San Francisco, CA 94080.

On the date indicated below, I served a copy of the following documents, a true and correct copy of which are attached hereto:

**OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEYS FEES AND COSTS**

**DECLARATION OF PAUL V. SIMPSON IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEYS FEES AND COSTS**

**DECLARATION OF ALFONSO QUINTOR IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION TO REMAND REMOVED ACTION AND FOR ATTORNEYS FEES AND COSTS**

I am readily familiar with the practice of this business for collection and processing of documents for mailing with the United States Postal Service.  Documents so collected and processed are placed for collection and deposit with the United States Postal Service that same day in the ordinary course of business.  The above-referenced document(s) were placed in (a) sealed envelope(s) with postage thereon fully prepaid, addressed to each of the below listed parties and such envelope(s) was (were) placed for collection and deposit with the United States Postal Service on the date listed below at South San Francisco, California.

John E. Hill, Esq.
Michael P. Guta, Esq.
Law Offices of John E. Hill
8105 Edgewater Drive, Suite 100
Oakland, CA 94621

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 26, 2007, at South San Francisco, California.

Sylvia Hansen

CERTIFICATE OF SERVICE OF NOTICE TO PLAINTIFF OF REMOVAL TO FEDERAL COURT