**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIPOLITO ACOSTA, JESUS ACOSTA, FILEMON GARCIA, ENRIQUE JAUREGUI, SAUL LOZANO, RICARDO MUNGUIA, JUAN M. NAVARRO, JUAN RODRIQUEZ, EVERARDO VILLA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>AJW CONSTRUCTION, a California Corporation; and Does I through XX,<br><br>　　　　Defendants. | Case No. 07-4829 SC<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

## I.   INTRODUCTION

On August 17, 2007, the plaintiffs Acostas, Garcia, Jauregui, Lozano, Munguia, Navarro, Rodriguez and Villa ("Plaintiffs") filed a Complaint in the Alameda Superior Court of California. See Notice of Removal, Docket No. 1, Ex. A. The defendant AJW Construction ("Defendant") filed a Notice of Removal ("Notice") with this Court on September 20, 2007. Id. Plaintiffs then filed a Motion to Remand Removed Action and For Attorney Fees and Costs ("Motion") on October 12, 2007. See Docket No. 6. Defendant submitted an Opposition and Plaintiffs filed a Reply. See Docket Nos. 10, 15.

For the following reasons, the Court GRANTS Plaintiffs' Motion.

///

**II. BACKGROUND**

Plaintiffs' Complaint alleges two causes of action: recovery of unpaid wages and statutory penalties pursuant to California Labor Code sections 203 and 226.3, and unfair business practices pursuant to California Business and Professions Code section 17200 et seq. Defendants have asserted in their Notice that the terms and conditions of Plaintiffs' employment were subject to a collective bargaining agreement. Opp'n at 2. Defendant removed to this Court pursuant to 28 U.S.C. § 1441(b). Although Plaintiffs only raise California state-law claims, Defendant asserts that the action is removable to federal court because the claims arise under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 301 et seq., and under the Employment Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiffs argue that their claims are premised wholly on California state law and, as such, create no federal jurisdiction.

**III. DISCUSSION**

"The burden of establishing federal jurisdiction is upon the party seeking removal . . . and the removal statute is strictly construed against removal jurisdiction." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194-95 (9th Cir. 1988) (internal citations omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Ordinarily, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

2

pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Thus, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

One exception to this, however, is the doctrine of complete preemption. Id. at 393. According to complete preemption, the force of certain federal statutes, including the LMRA and ERISA, is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Id. (internal quotation marks omitted); see also Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-67 (1987). In the present case, Defendant argues that federal jurisdiction is created by preemption under both the LMRA and ERISA.

**A.  Preemption Under the LMRA**

Section 301 of the LMRA provides, in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185(a).

"Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, 482 U.S. at 394 (citing Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)). Where a state-law claim requires interpretation of a collective bargaining

3

agreement, such a claim will be preempted by § 301. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988) (stating "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective bargaining agreement"). Where the dispute hinges on a "purely factual inquiry [which] does not turn on the meaning of any provision of a collective-bargaining agreement," id., however, the "state law remedy . . . is 'independent' of the collective-bargaining agreement . . . ." Id.

In addition, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 124.

Plaintiffs' first cause of action is for unpaid wages.[1] Defendant argues that regardless of Plaintiffs' theory for recovery of unpaid wages, Plaintiffs' claims will require the interpretation of the collective bargaining agreement that governs the terms of Plaintiffs' employment. Therefore, according to Defendant, the state-law claim is preempted by the LMRA.

Contrary to Defendant's assertion, however, Plaintiffs' claims do not appear to require any meaningful interpretation of

---

[1] Although Plaintiffs also assert a cause of action under California's Business and Professions Code § 17200, only the unpaid wages claim is relevant to the present motion.

4

the collective bargaining agreement.  The dispute does not hinge on the calculation of each Plaintiff's hourly wages.  Plaintiffs have specified the individual hourly wage that each is owed and Defendant has not contested these hourly rates.  Instead, the claims will hinge on the number of hours Plaintiffs worked for which they were not paid.  Such calculations, while perhaps requiring some consultation with the collective bargaining agreement, do not, according to Defendant's Opposition, require the interpretation of the contract terms themselves.  See Livadas, 512 U.S. at 123 (stating that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

Ultimately, Defendant has not demonstrated that Plaintiffs' unpaid wages claims are "substantially dependent on an analysis of a collective bargaining agreement."  Firestone v. S. Cal. Gas Co., 219 F.3d 1063, 1065 (9th Cir. 2000) (internal quotation marks omitted).  Instead, from all appearances, the dispute requires little, if any, interpretation of the collective bargaining agreement.  The dispute does not hinge on whether Plaintiffs were paid at the appropriate hourly rates but rather on whether Plaintiffs were paid for all of the time they worked.  Such a dispute is more analogous to the facts of Livadas, where "the primary text for deciding whether [the plaintiff] was entitled to a penalty was not [the collective bargaining agreement], but a calender."  512 U.S. at 124.  For these reasons, the Court finds

5

that Plaintiffs' state-law claims are not preempted by § 301 of the LMRA.

### B. Preemption Under ERISA

Defendant also argues that Plaintiffs' claims for unpaid wages are preempted by ERISA. Specifically, Defendant asserts that because "Plaintiffs are seeking accrued vacation time pursuant to Labor Code Section 227.3," and Defendant "only offers paid vacation to its Union employees pursuant to the employee benefit plan," ERISA preempts Plaintiffs' state law claim. Opp'n at 5.

ERISA defines an employee benefit plan as any plan, fund, or program maintained by an employer or employee organization for the purpose of providing various benefits, including medical and vacation. 29 U.S.C. § 1002. Whether a certain benefit plan falls within the coverage of ERISA is often a complicated question and requires a case-by-case analysis. For example, the Supreme Court has held that a "multiemployer fund created to provide vacation benefits for union members who typically work for several employers during the course of a year . . . . falls within the scope" of ERISA. Mass. v. Morash, 490 U.S. 107, 114 (1989). "In addition, the creation of a separate fund to pay employees vacation benefits would subject a single employer to the regulatory provisions of ERISA." Id. Certain policies, however, that pay employees for unused vacation time do not constitute employee welfare benefit plans. Id.

In another example of the analysis required to determine whether a vacation benefit plan falls under ERISA, a court in this

6

1 district, after thoroughly examining the plan, found that where
2 vacation benefits "must be used by the employee during the
3 calender year in which they accrue, or else they are forfeited,"
4 the plan is not covered by ERISA. Czechowski v. Tandy Corp., 731
5 F. Supp. 406, 408 (N.D. Cal. 1990). The court held that because
6 the employer disbursed vacation benefits directly to the employees
7 and was then reimbursed by the vacation benefit plan, the "trust
8 [did] not implicate any concerns over mismanagement since no funds
9 are accumulated in it." Id. In addition, because "the risk an
10 employee [bore was] precisely the same as his employment risk,"
11 the principles justifying the protections provided by ERISA were
12 not implicated.[2] Id.

13 Defendant offers the declaration of Alfonso Quintor,
14 president of AJW Construction, as proof that the vacation plan at
15 issue is covered under ERISA. Quintor Decl. ¶ 3. Quintor,
16 however, provides no explanation for this other than the
17 conclusory statement that "[t]he collective bargaining agreement
18 governing Plaintiffs' employment with AJW establishes several
19 employee benefits . . . pursuant to a jointly administered multi-
20 employer employee benefit plan regulated by the Employment [sic]
21 Retirement and Income Security Act of 1974." Id. As noted above,
22 however, determination of whether a vacation benefit plan is in
23 fact covered by ERISA turns on the terms and conditions of the
24 individual plan.

---

[2] The Supreme Court has stated: "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." Morash, 490 U.S. at 109.

    Recognizing this, Defendant also cites to Section 28A of the collective bargaining agreement to support the ERISA preemption argument. Section 28A, however, merely establishes a payment schedule for employer contributions to various funds, including health, pension and vacation. See Quintor Decl., Ex. A at 22. The Court cannot glean, from the less than two pages that comprise Section 28A, sufficient details regarding the vacation plan to determine whether it falls under ERISA. Nor has Defendant provided the Court with any other information regarding the terms of the vacation plan, how it is administered, or even the benefits that employees receive under it. Ultimately, Defendant, having the burden to demonstrate federal jurisdiction, has failed to provide the Court with the support necessary to determine whether the vacation plan at issue is covered by ERISA.

    Finally, even assuming, arguendo, that the vacation plan was covered by ERISA, Plaintiffs' claims for unpaid wages accrued during paid time off appear to require little more than cursory consultation with the collective bargaining agreement. See Livadas, 512 U.S. at 123. Plaintiffs' allegations that they have accrued paid time off is not, in and of itself, enough to create ERISA preemption. For these reasons, the Court finds that Plaintiffs' action is not preempted by ERISA.

### C. **Attorneys' Fees**

    In addition to remanding the case, Plaintiffs also seek attorneys' fees and costs in the amount of $900.00 for the filing of the instant motion. Although 28 U.S.C. § 1447(c) authorizes the imposition of attorneys' fees when a case is remanded, the

Court declines to do so.

**IV. CONCLUSION**

For the reasons discussed herein, the Court GRANTS Plaintiffs' Motion to Remand. The case is therefore REMANDED to the Alameda Superior Court. Plaintiffs' Motion for Attorneys' Fees is DENIED.

IT IS SO ORDERED.

Dated: November 30, 2007



UNITED STATES DISTRICT JUDGE